CHARLES EBELMESSER *et al.*

*v.*

CAROLINE EBELMESSER *et al.*

*Filed at Mt. Vernon June 21, 1881.*

1. PURCHASER—*who may become—administrator may not at his own sale.* An executor or administrator has no right to purchase real estate of his testator or intestate at his own sale, either directly, or indirectly through an agent. Such a purchase is not void, however, but only voidable by the heirs or devisees.

2. JUDICIAL SALE—*when an account should be taken on setting sale aside.* On bill to set aside an administrator's sale of land, on the ground of his being the purchaser, he will be treated as a trustee, and as such will be entitled to have an account stated. He will be required to account for rents and profits received from the trust property, or if it is converted into money, then for the money, with interest. On the other hand, he will be credited with moneys paid for taxes, for money paid on the purchase and applied to the payment

of debts against the estate, with interest on such advances, and for necessary repairs, and for proper and reasonable improvements placed upon the land, which have enhanced its value.

3. For unreasonably expensive or unsuitable improvements no allowance can be had, and in no event can allowances for improvements be made beyond the actual increase of the value of the land, as ascertained by its sale. The purchaser can not be allowed to make improvements that work a loss or injury to the heirs.

4. SAME—*decree on setting aside.* Where an administrator's sale of land indirectly to himself is set aside, the court should charge on the land the balance of the money paid on the purchase and for taxes, and the value of improvements proper to be allowed, above the amount of the rents and profits derived from the land, and allow the heirs to redeem by paying the sum thus charged, within a reasonable time to be fixed by the court, and on their failure to pay the same, order a sale of the land by the master, on proper notice, requiring him to offer it at the price thus charged against it. If any advance is made, he should strike it off to the highest bidder, but if no advance is made, it should be struck off to the defendant as purchaser.

APPEAL from the Circuit Court of Fayette county; the Hon. CHARLES S. ZANE, Judge, presiding.

This was a suit in chancery, instituted in the court below, by Caroline Ebelmesser, the widow, and Peter Ebelmesser, Carl Ebelmesser, and Erestine Ebelmesser, the children and heirs at law, of David Ebelmesser, deceased, against Charles Ebelmesser and Samuel W. Rode.

The bill alleges that David Ebelmesser died intestate, in May, 1876, being at the time of his death the owner of a tract of land described in the bill. The defendant Charles Ebelmesser was appointed administrator of the estate, and, in that capacity, at the January term, 1877, of the county court of Fayette county, obtained an order for the sale of a portion of the land mentioned, to pay the debts of the estate.

It is charged in the bill that Charles Ebelmesser, the administrator, and Rode, each desiring a portion of the land which was to be sold under the order of the county court, arranged with one Charles Humpeler to buy the property in at the administrator's sale, and then convey the respective parts to the administrator and to Rode, who were to pay the

purchase money; that in pursuance of this arrangement Humpeler did purchase the land at the administrator's sale, received a deed therefor, and afterwards conveyed to the administrator and Rode, these grantees of Humpeler paying the entire purchase money. It is alleged that in the transaction Humpeler did not act on his own behalf, but as the agent of the administrator and Rode. The bill prays that the administrator's sale be set aside, and for general relief. Issues were made up upon the matters contained in the bill, and upon the hearing the court found, from the evidence, that David Ebelmesser died intestate in 1876, leaving complainants his widow and heirs; that Charles Ebelmesser was appointed administrator of his estate; that David Ebelmesser resided on a forty acre tract of land, worth $600 or $700, cornering with the lands mentioned in complainants' bill; that the personal estate of the said David Ebelmesser was not sufficient to pay his debts; that said Charles Ebelmesser, the administrator, obtained a decree in the county court of Fayette county, in January, 1877, to sell the tract of land in complainants' bill mentioned, to pay his debts. The land was sold by the said Charles Ebelmesser, as such administrator, on the 17th day of February, A. D. 1877, and the same was bid off by Humpeler for the sum of $300. The court further found that said land was of the value of about $500.

The court further found from the evidence that there was collusion between the two defendants herein. Each of them wanted half of the said land,—one the north half, the other the south half,—and that there was an understanding between them that the administrator should have a third party bid off the land, and then deed one-half to one of the defendants and the other to the other, and that defendant Rode should not bid at the sale. The court further found that defendant Charles Ebelmesser procured Humpeler to bid off said land for him, Ebelmesser; that immediately after the sale, in February, 1877, Charles Ebelmesser took possession of one-half of said land, and defendant Rode the other half, and

that in April, 1878, Humpeler made to each a quitclaim deed to half of said tract of land, and that Humpeler never paid the administrator for said land,—but that said administrator furnished the money to pay $300 of the indebtedness of David Ebelmesser's estate, and that he now holds the title to the north half of said tract of land, and defendant Rode has the title to the south half of said tract.

It was therefore ordered and decreed by the court that the sale made by Charles Ebelmesser, as administrator of David Ebelmesser, on the 17th day of February, 1877, of the land in controversy to Humpeler, be set aside, annulled, and made of no effect and void, and that the deed made to said lands by said Charles Ebelmesser, as administrator of said estate, to Humpeler, in pursuance of said sale, be canceled and set aside as a cloud on the title of complainants, and that the two deeds made April 17, 1878, by Humpeler, one conveying the north half of said tract to Charles Ebelmesser and the one conveying the south half of said tract of land to the defendant Rode, be canceled and rendered null and void; that the cloud they create upon complainants' title be removed; that said defendants surrender the possession of said land back to complainant Caroline Ebelmesser, and upon failure to do so that writ of restitution issue in the name of complainants, and that defendants pay the costs of this suit, and that execution and fee bill issue therefor.

Thereupon defendants filed the following objections to the approval of said decree:

" And now come defendants and object to the approval of the decree filed herein, and ask that the same be re-opened and a new decree be entered, or that the decree filed be modified, for the following reasons, viz:

"*First*—The finding of facts is not sustained by the evidence heard.

" *Second*—The decree is erroneous, unjust and inequitable.

" *Third*—If it is proper for the court to cancel the sale of the lands, it should find and take an account of the amount

of purchase money paid, the amount of taxes paid, and the amount and value of permanent improvements made, and decree that complainants pay the same, with interest, before the deeds be canceled, or decree that the lands be re-sold, and at the sale be offered for the aggregate of these sums, and that in the event there are no higher bidders the sale made by the administrator be affirmed."

The court overruled these objections and approved the decree. The defendants appealed.

Mr. EDWIN M. ASHCRAFT, for the appellants:

It is believed no case can be found where a court of equity has set a sale aside without placing the parties *in statu quo.* If an executor, administrator or trustee has purchased at his own sale, in equity he is always in some way protected, either by having his rights subrogated or made a lien upon the property. *Donner* v. *Fortescue,* 3 Atk. 130; *Hardwick* v. *Vernon,* 4 Ves. 411; *Davon* v. *Fanning,* 2 Johns. 252; *Thorp* v. *McCullum,* 1 Gilm. 614; *Michand* v. *Girard et al.* 4 How. 553; *Miles* v. *Wheeler,* 43 Ill. 128; *Kruse* v. *Steffens,* 47 id. 114; *Coat et al.* v. *Coat et al.* 63 id. 73; *Ives* v. *Ashley,* 97 Mass. 198; 2 Sugden V. & P. (8th Am. ed.) 687, note (a); *Blood* v. *Hayman,* 13 Metc. 231; *Robbins* v. *Bates,* 4 Cush. 104; *Dunlap* v. *Mitchell,* 10 Ohio, 117; *Musselman* v. *Eshleman,* 10 Pa. St. 401; *Moore* v. *Helton,* 12 Leigh, 1; *Mercer* v. *Newson,* 23 Ga. 151; *Harrington* v. *Brown,* 5 Pick. 519; *Shine* v. *Redwine,* 30 Ga. 780; *Boyd* v. *Blankman,* 29 Cal. 19; *Anderson* v. *Green,* 46 Ga. 361; *Smith* v. *Cranberry,* 39 id. 381; *Grubb* v. *McGlawn,* 39 id. 672; *Flanders* v. *Flanders,* 23 id. 249; *Mead* v. *Bygton,* 10 Vt. 116; *Petrie* v. *Clark,* 11 Serg. & R. 377; *Green* v. *Sargent,* 23 Vt. 446; *Hawley* v. *Cramer,* 4 Cow. 718; *Jennison* v. *Hapgood,* 7 Pick. 1; *Toney* v. *Bank of Orleans,* 9 Paige, 644.

Such sales will be treated as valid, until avoided. *Trimmier* v. *Trail,* 2 Bailey, 480; *Dunlap* v. *Mitchell,* 10 Ohio, 117.

The property will be put up again for sale; but if more

can not be obtained for it, the executor's purchase will be confirmed. *Bailey* v. *Robinson,* 1 Gratt. (Va.) 4.

Where the administrator has purchased and made valuable improvements. *Potter* v. *Smith,* 36 Ind. 231; *Smith* v. *Drake,* 23 N. J. Eq. 302.

The defrauding party must be placed *in statu quo.* *Lane* v. *Latimer,* 41 Ga. 171; *Sanborn* v. *Batchelder,* 51 N. H. 426; *Perley* v. *Balch,* 23 Pick. 283; *Thurston* v. *Blanchard,* 22 id. 18; *Beetem* v. *Burkholder,* 19 Smith, (Pa.) 249; *Manahan* v. *Noyes,* 52 N. H. 232.

In the above cited cases many will be found in which much more fraud is found than in the case at bar.

Appellees now claim that the sale is wholly void, and that the bill is only filed to remove the clouds from their title, and they have drawn their decree upon that theory. If the deeds are void, they can not maintain this action.

The bill, evidence and decree all agree that appellants are in possession, and the decree awards a writ of possession.

A bill to remove cloud from title can not be maintained by a party out of possession, if the lands are improved and occupied by the defendant. *Fire Insurance Co.* v. *Buckmaster,* 13 Ill. 201; *Kennedy* v. *Northop,* 15 id. 152; *Smith* v. *McConnel,* 17 id. 139.

The act of 1869 only applies where complainant is in possession, or where the lands are unimproved or unoccupied. If the defendant has possession, there is a complete remedy, if the deed is void, by an action of ejectment. *Wing* v. *Sherrer,* 77 Ill. 200.

It will be found, however, that the sale is voidable, and that the court should have found the amount of purchase money, permanent improvements, etc., and made them a lien upon the lands, and ordered a re-sale.

Messrs. HENRY & PALMER, for the appellees:

The bill asks to have all the deeds set aside for fraud, but makes no claim for rents or profits. The answers are, in

effect, denials of all the material allegations of the bill, with no allegations showing any right to any sort of affirmative relief, not even for improvements, taxes, or any kind of expenditure.

We understand it to be an elementary principle of law, that where actual fraud is shown, equity follows the law, and will set aside the sale without reimbursement or indemnity. "That no right can be deduced from a fraudulent act. Every one who engages in a fraudulent scheme, forfeits all right to protection, either at law or equity. The law does not so far countenance fraudulent contracts as to protect the perpetrator to the extent of his investment. No party should be permitted to join in a conspiracy to cheat another, with impunity." See Bump on Fraudulent Conveyances, p. 572.

The fact that appellant Ebelmesser, one of the perpetrators of the fraud, one of the conspirators, was the officer of the law charged with the duty of making sale of the lands,— that he accepted a trust or fiduciary relation to the appellees,— does not go in mitigation, but should rather aggravate the actual fraud, and give him even less consideration in a court of equity than his co-conspirator, Rode. This is not like that class of cases that appellants' counsel seems to have in his mind, where a trustee, without actual fraud, becomes the purchaser at his own sale for a fair price, makes valuable improvements, pays taxes, removes liens, and in after years is called upon by bill not only for the land, but also rents and profits. In that class of cases courts of chancery have held that rents and profits may be offset with taxes, improvements and removals of liens from the lands. See *Dutcher* v. *Leake*, 44 Ill. 398; *Garrett* v. *Moss*, 20 id. 544.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellants do not, on this appeal, contest the findings of the court below, but claim that, admitting them to be true, they do not support the decree. It is insisted that, conceding the facts authorized the court to set aside the sale, ·

it could not be done without refunding the money paid by the administrator and applied to payment of the debts of the estate, all taxes paid on the land, with interest, and for all improvements made on the land, and the court erred in not having an account stated and rendering a decree for the amount found due to him, and making it a charge on the land.

It is conceded (but if it were not, the doctrine is firmly established,) that an executor or administrator has no power to purchase property at his own sale; and being prohibited, he can not do so indirectly, by an agent, as the purchaser. See *Miles* v. *Wheeler*, 43 Ill. 128; *Kruse* v. *Steffens*, 47 id. 114; *Thorp* v. *McCullum*, 1 Gilm. 614; *Coat* v. *Coat*, 63 Ill. 73. And these cases are in harmony with the current of authority, both British and American.

It is held that such a purchase is not void, but voidable; that where the heirs file a bill to set aside the sale, the executor or administrator will be treated as a trustee, and as such is entitled to have an account stated, as any other trustee; that he must account for rents and profits received from the trust property, or, if converted into money, then for the money, with interest. On the other hand, he will be credited with moneys paid for taxes, for money paid on the purchase and applied to the payment of debts against the estate, with interest on such advances, and for necessary repairs. Such is the doctrine of the cases referred to above. In failing to have such an account taken, the court below erred.

It is also said that appellants should have been allowed for improvements placed on the land. In the case of *Kinney* v. *Knoebel*, 51 Ill. 112, where Morrison had purchased a large and valuable tract of land, worth $35,000 or upwards, under a small execution against deceased, which was done under an arrangement with the executor and creditors, to avoid the necessity of applying to the court for an order for the sale of the property to pay the debts, it was held the sale was void. It was also held that the sale should be set aside and

cancelled; but, as a condition to the cancellation, the heirs were required to refund the purchase money, with interest, all taxes paid on the land, and for all proper, lasting and valuable improvements. In that case it was held the sale was made without power, and void, yet Morrison had those allowances made to him. We think the principle announced in that case governs this question, and that appellants should be allowed for reasonable and proper improvements placed upon the land, and which have enhanced its value. But if the improvements made were unreasonably expensive or unsuitable, no allowance should be made for them; but in no event can allowances for improvements be made beyond the actual increase of the value of the land, as ascertained by its sale. Such a purchaser can not be allowed to make improvements that work loss or injury to the heirs. He can be allowed no more than the enhanced value received on the sale of the land.

It is urged, that as complainants did not ask for an account it is improper to have one stated. The power, and even the duty, of a court of equity, in this class of cases, to impose equitable terms in granting relief, is undoubted. It is a maxim as old as the court of equity itself, that a person who seeks equity must do equity; and equity requires that appellants should have the money advanced on the purchase and paid to the creditors refunded to them, as well as all taxes paid on the lands since their purchase, and outlays for proper, lasting and valuable improvements, to the extent of the increased value received on the sale. The court below erred in not ascertaining the sum thus paid, and declaring it a lien on the property.

If, on a statement of an account, after charging appellants with rents and profits received from the land, it appears that appellants, or either of them, have paid money on the purchase by Humpeler,—have paid taxes and made improvements that are proper to be allowed,—the court will charge the balance on the land, and allow appellees to redeem it by

paying the amount, within a reasonable time to be fixed by the court, and on their failure to thus pay the same, order it to be offered for sale by the master, after proper notice shall be given; but he will be required to offer it at the price thus charged against it, and if any advance shall be made above that sum he shall strike it off to the highest bidder, but if no such advance shall be made, then to knock it off to appellants, as purchasers.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*