CHARLES B. WILLIAMS

*v.*

WILLIAM K. VANDERBILT.

*Filed at Ottawa, June 19, 1893.*

1. MECHANIC'S LIEN—*upon a leasehold interest—extent of the lien.* Where the party furnishing the material in altering and repairing a building, contracts with the lessee or lessees of the premises, whatever lien he has under the contract will extend to and attach to the leasehold interest only.

2. The party with whom the contract is made by the person furnishing labor or materials, is only regarded as owner, within the meaning of the law, to the extent of the interest which he owns. It is that interest which is subject to the lien. A tenant for life or for years can not, by contract, create a lien on the fee. He may, by contract, create a lien to the extent of his right and interest in the premises, but no further.

3. The estate of the lessor can not be subjected to a lien for work done or materials furnished under a contract with the lessee, unless the agreement or consent of the lessor is shown, or unless he has done some act to make his estate liable. But if the lessor agress to pay to the lessee a gross sum toward the erection of a house on the demised premises, the estate of the lessor is bound by the mechanic's lien.

4. SAME—*subject to arrears of rent.* If a lease for years has been forfeited for non-payment of rent, the holder of a mechanic's lien upon the leasehold estate must pay all arrears of rent to the lessor, before he can acquire the rights of the lessee thereunder, even by purchase.

5. SAME—*subject to the conditions of the lease—effect of forfeiture.* A mechanic's lien, which attaches to a leasehold estate, is subject to the conditions of the lease, and may be defeated by a forfeiture. When default in payment of the rent is ground for forfeiture without notice, the lessor may declare the same, and thereby defeat a mechanic's lien growing out of a contract with the lessee.

6. SAME—*statute strictly construed.* The statute which gives a mechanic's lien is in derogation of the common law, and must receive a strict construction. It will not be applied by the courts to cases which do not fall within its provisions. If those provisions are not broad enough, it is the province of the legislature to extend them.

7. SAME—*upon leasehold estate—subject to the burden of repairs.* A statute which confers a lien upon the leasehold interest must be construed with reference to the common law rule, that the burden of repairs is cast upon the tenant, and that the landlord is under no implied obligation to make them.

8. SAME—*on leasehold estate—effect of surrender of the lease.* The voluntary surrender of a lease to the owner of the fee can not affect the lien upon the estate of the lessee which attached during the existence of the lease, and the merger of the estate of the lessee with that of the owners of the fee will not destroy the previous lien.

9. LANDLORD AND TENANT—*what amounts to a surrender of the lease.* Execution of a new lease, with the tenant's consent, to another person, who enters thereunder and pays rent, will amount to a surrender. An agreement, either express or inferable from the conduct of the parties, to release the original lessee and accept a new tenant, may operate as a surrender; and an actual and continued change of possession, by the mutual consent of the parties, will amount to a surrender by operation of law.

10. There may be a parol surrender of a written lease. There may be a surrender by an abandonment of the premises by the tenant and an entry thereon by the landlord. An executed agreement to surrender may be operative as a surrender.

11. SAME—*waiver of grounds of forfeiture.* The general rule is, that "Any act done by a landlord, knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture." Although the lessor may be aware that the premises are being repaired under the direction of the lessee, yet if he has no reason to believe that the lessee is not able to pay his debts, he will not be obliged to assume that the persons employed to do the work will not receive their money from the lessee, and that an immediate forfeiture is necessary to save himself from liability.

12. SAME—*demanding rent after the day it falls due.* The common law rule, making it necessary to demand the rent on the day it falls due in

order to declare a forfeiture, is abrogated in this State. The landlord may forfeit the lease for non-payment of rent on any day after the rent falls due.

13. SAME—*forfeiture not favored.* A forfeiture of a leasehold interest in land will not be implied, nor is it favored by the rules of law.

14. SAME—*lessee destroying rights of co-lessee.* One lessee can not destroy the rights of his co-lessees, nor extinguish their title by conveying to his lessor.

15. REAL PROPERTY—*improvements thereon by one not the owner—reimbursement.* As a general rule, improvements of a permanent character, made upon real estate and attached thereto, without the consent of the owner of the fee, by one having no title or interest, become a part of the realty and vest in the owner of the fee.

16. In equity, when one makes improvements innocently, or through mistake, upon the land of another, he will not ordinarily be allowed to enforce a claim for reimbursement *as an actor;* but when the true owner seeks relief in equity, as, for instance, to set aside a sale of the land on which the improvements have been made, or to obtain an accounting for rents and profits, he may be required to make compensation for the improvements, upon the principle that he who seeks equity must do equity.

17. SAME—*equitable lien—after forfeiture of lease.* The theory of equitable liens has its ultimate foundation in contracts, express or implied. Where lessees of a term, under a lease which authorized its forfeiture for non-payment of rent, employed a party to furnish the material and labor for altering and repairing the buildings, and nearly a month after an installment of rent became due, the lessor declared the lease forfeited and re-entered; the lessor never authorized the contract of the lessees with the mechanic, nor ever promised to pay for the work and materials furnished, or held out any inducement to the contractor to proceed with his contract: *Held,* that the contractor was not entitled to any equitable lien on the improvements put upon the premises before the forfeiture.

18. To entitle one making improvements innocently, or through mistake, on the lands of another to recover the value thereof, in proceedings instituted by the real owner, it must appear that the party making the improvements did so under a claim of title which turned out to be defective, or under some mistake concerning his rights, or because he was induced to incur the expenditures through the fraud or deception of the owner.

19. Even in such case compensation will only be allowed for the increased value caused by the improvements. Courts of equity will not grant active relief and sustain a bill to recover for such enhanced value, after the true owner has recovered the premises at law.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of
Cook County; the Hon. H. M. SHEPARD, Judge, presiding.

This is a bill, filed on September 23d, 1889, by the ap-
pellant against the appellee, in the Superior Court of Cook
county, to enforce a lien for work done and materials fur-
nished upon a lot and building in Chicago. The Superior
Court rendered a decree on August 11th, 1890, finding that
the complainant, Williams, was entitled to a lien upon said
lot and building for the amount due, and directing that, in
default of payment within 30 days, said premises should be
sold by the master. Upon appeal to the Appellate Court,
the latter court reversed the decree of the Superior Court
and remanded the cause with directions to dismiss the bill.
From such judgment of the Appellate Court the present
appeal is prosecuted by Williams.

On July 6th, 1889, the defendant, Vanderbilt, being the
holder of the legal title to the property, executed a written
lease of the same to Lewis Bartels, James Crelly and Flor-
ence E. Luits for five years from July 21st, 1889, to July 21,
1894, at a rent payable in monthly installments, each in
advance, upon the 21st day of each month during the term.
The lease provided, that if default should be made in the
payment of the rent, or any part thereof, it should be
lawful for the lessor on his election, "without notice, to
declare said term ended, and to re-enter said demised
premises," etc.

The rent for the first month, from July 21st to August
21st, was paid, and the lessees entered into possession.
On August 2d, 1889, a written contract was entered into be-
tween Bartels, one of the lessees, and complainant, Williams,
by which the latter agreed to make certain alterations and
repairs upon the building.

The installment of rent falling due on August 21st, 1889,
was not paid. The lease was declared forfeited for the
16—145 ILL.

non-payment of said rent, and the appellee, through his agent, re-entered and took possession of the premises on September 13th, 1889. It sufficiently appears from the evidence that the lessees were and are insolvent. It also appears, that the appellant had no money to pay the rent due, either before or after the forfeiture, and that, after the re-entry by the landlord, he asked for time to raise money to pay the rent demanded. The evidence also tends to show that appellant expected to reimburse himself by a sale or assignment, or pledge, as security, to some third person, of such new lease as he might obtain after the forfeiture, or by making a sale of the premises to some third person, at a figure which the landlord would accept.

Messrs. OLIVER & SHOWALTER, for the appellant:

If a landlord elects to accept a surrender of the lease, he will take back the premises subject to liens existing at the time against the estate of the lessee. *Dobschuetz* v. *Holliday*, 82 Ill. 374; *Gaskill* v. *Trainter*, 3 Cal. 334; Phillips on Mechanics' Liens, sec. 192.

Failure to pay rent will not create a forfeiture of the lease. Phillips on Mechanics' Liens, sec. 192.

The entry of September 13th can not be deemed operative as a forfeiture, save by imputing to Vanderbilt the intent to charge Williams' lien upon the freehold. This is the necessary consequence in equity of the legal conclusion by every one of the following cases: that the entry of September 13th, while it may have extinguished the rights of the lessees, could not have extinguished the rights of Williams. *Benavides* v. *Hunt*, 79 Texas, 383; *Korner* v. *Contract Co.*, 9 Bush, 209; *Sharon Co.* v. *City of Erie*, 41 Pa. St. 351; *Andrews* v. *Senter*, 32 Maine, 397; *Hooper* v. *Cummings*, 45 id. 365; *Gould* v. *Richards*, 16 Gray, 326; *Willard* v. *Henry*, 2 N. H. 122; *Barrie* v. *Smith*, 47 Mich. 132.

An equitable lien may be implied and declared by a court of chancery out of general considerations of right and

justice, as applied to the relations of the parties and the circumstances of their dealings. Jones on Liens, sec. 27; *Perry* v. *Board of Missions*, 102 N. Y. 99.

Mr. ROBERT MATHER and Mr. WILLIAM ELMORE FOSTER, for the appellee:

It is well settled, that if a person lays out money on another's property, with knowledge or notice of the true state of the title, he has no claim to be reimbursed, and of course has no lien. *Dart* v. *Hercules*, 57 Ill. 446; *Judson* v. *Stephens*, 75 id. 255; *McCarty* v. *Carter*, 49 id. 53; *Procter* v. *Tows*, 115 id. 138; *Matson* v. *Gardner*, 119 id. 312; *Thor* v. *Oleson*, 125 id. 365; *Henderson* v. *Connelly*, 123 id. 98; *Hickox* v. *Greenwood*, 94 id. 266; *Osgood* v. *Pacey*, 23 Ill. App. 116; *Wilson* v. *Schuck*, 5 Bradw. 572; *Cook* v. *Kraft*, 3 Lans. 512; *Davidson* v. *Barclay*, 63 Pa. St. 406; *Cannon* v. *Copeland*, 43 Ala. 252; *Frances* v. *Sayles*, 101 Mass. 435.

The theory of equitable liens has its ultimate foundation in contracts express or implied. 1 Jones on Liens, sec. 28.

A court of equity has no power to create a lien. It can only recognize and enforce a lien which is created by the act of the parties. *Dewey* v. *Eckert*, 62 Ill. 218.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Appellant's contract for doing the work and furnishing the material, in altering and repairing the building, was with the lessee, or lessees, of the premises. Therefore, whatever lien he had under the contract extended to the leasehold interest only. Section 1 of the Lien Law provides, "that any person who shall by contract  *   *   * with the owner of any lot or piece of land, furnish labor or materials   *   *   * in building, altering, repairing or ornamenting any house, or other building or appurtenance thereto, on such lot   *   *   * shall have a lien upon the

whole of such tract of land or lot, and upon such house or building and appurtenance, for the amount due to him for such labor, material or services.'' Section 2 provides, that said lien ''shall extend to an estate in fee, for life, for years, or any other estate, or any right of redemption, or other interest, which such owner may have in the lot or land at the time of 'making the contract.'' (2 Starr & Cur. Ann. Stat., chap. 82, pp. 1512–1515). The party with whom the contract is made by the person furnishing the labor or materials, is only regarded as owner, within the meaning of the law, to the extent of the interest which he owns. It is that interest which is subjected to the lien. (*Hickox* v. *Greenwood*, 94 Ill. 266.) A tenant for life or years can not, by contract, create a lien upon the fee; he may, by contract, create a lien to the extent of his right and interest in the premises, but no further. (*McCarty* v. *Carter*, 49 Ill. 53; *Judson* v. *Stephens*, 75 id. 255.) As appellant's lien extended to the leasehold estate only, it did not take effect upon appellee's legal title. The statute, which gives a mechanic a lien, is in derogation of the common law, and must receive a strict construction. (*Belanger* v. *Hersey*, 90 Ill. 70.) It will not be applied by the courts to cases which do not fall within its provisions. If those provisions are not broad enough, it is the province of the legislature to extend them. (*Stephens* v. *Holmes*, 64 Ill. 336; *Hunting* ` ton v. *Barton*, id. 502.)

A mechanic's lien, which attaches to a leasehold estate, is subject to all the conditions of the lease. (Phillips on Mech. Liens, sec. 192; 2 Jones on Liens, sec. 1273; 15 Am. & Eng. Ency. of Law, p. 21.) Here, one of the conditions of the lease was, that, in case of default in the payment of the rent, the landlord could without notice declare the term ended, and re-enter the premises. A forfeiture will not be implied, nor is it favored by the rules of law (2 Jones on Liens, sec. 1273.) But in the present case there seems to be no question as to the right of the appellee

to forfeit the lease under its terms, nor do we see that there can be any question as to the effectiveness of the forfeiture which actually took place. The month's rent, which was payable in advance on August 21st, 1889, was not paid. When Bartels, one of the lessees, was called upon to pay the rent in the early part of September, 1889, he stated to appellee's agent that he could not pay it, and that his co-lessees, Crelly and Luits, were irresponsible and unable to pay. Appellant knew, that Bartels had nothing but a lease of the premises before he did any work upon the building. He also knew early in September, that default had been made by the lessees in the payment of the rent due on August 21st. He, and the architect who was superintending his work, had an interview with the appellee's agent on September 10th, in which it was conceded, that the lessees were unable to pay either the rent, or the amount due for said work. Appellant was then informed by the agent, that the lease would be cancelled or forfeited within a fews days on account of the non-payment of the rent due, but he made no offer to pay the rent so as to keep the lease alive, and made no opposition to the threatened forfeiture of the lease. The appellee re-entered the premises, in pursuance of the terms of the lease, on September 13th, and took possession of the same, and at once notified appellant that he had done so. On September 14th, appellant had another interview with appellee's agent, but made no tender of the rent due, nor any offer to pay it, nor any complaint that the forfeiture of the lease had not been regular and valid. If the lease has been forfeited, the holder of the lien must pay all arrears of rent to the lessor before he can acquire the rights of the lessee thereunder, even by purchase. (2 Jones on Liens, sec. 1273; *Rothe* v. *Bellingrath*, 71 Ala. 55.)

Counsel for appellant invoke the doctrine that, where the landlord elects to accept a surrender of the lease, he takes back the premises subject to liens existing at the time

against the estate of the lessee. It was said by this court in *Dobschuetz* v. *Holliday*, 82 Ill. 371, that the voluntary surrender of the lease to the owner of the fee can not affect the lien upon the estate of the lessee which attached during the existence of the lease, and that the merger of the estate of the lessee with that of the owners of the fee would not destroy the previous lien. ( *Gaskill* v. *Trainer*, 3 Cal. 334; Phillips on Mech. Liens, sec. 192; 2 Jones on Liens, sec. 1273; 15 Am. & Eng. Ency. of Law, p. 21.) But in the case at bar, there was a forfeiture of the lease, and not a voluntary surrender of it. It is true, that Bartels, one of the lessees, expressed his willingness to have the lease cancelled in order to get rid of Crelly and Luits, and have a new lease in which he should have an interest, made out to the appellant; and the latter desired a new lease to himself when the old one should be forfeited.

There may be a parol surrender of a written lease. ( *Baker* v. *Pratt*, 15 Ill. 568.) There may be a surrender by an abandonment of the premises by the tenant and an entry into them by the landlord. (2 Wood's Land. and Ten., sec. 494, pp. 1169–1173.) An executed agreement to surrender may be operative as a surrender. ( *Idem*, p. 1169.) Execution of a new lease, with the tenant's consent, to another person, who enters thereunder and pays rent, will amount to a surrender. ( *Stobie* v. *Dills*, 62 Ill. 432.) An agreement, either express or inferable from the conduct of the parties, to release the original lessee and accept a new tenant, may operate as a surrender. ( *Fry* v. *Patridge*, 73 Ill. 51.) An actual and continued change of possession, by the mutual consent of the parties, will amount to a surrender by operation of law. ( *Dills* v. *Stobie*, 81 Ill. 202.) But we do not think, that an application of these definitions to the conduct of the parties herein will establish a voluntary surrender of the demised premises. Crelly and Luits were regarded as being averse to a forfeiture of the lease, and were not spoken to or con-

sulted about it.   Indeed, it was feared that a suit might be necessary to extinguish their interest.   Even if Bartels' willingness to have the lease forfeited could be construed as a surrender on his part, this would not affect the rights of Crelly and Luits.   One lessee can not destroy the rights of his co-lessees, nor extinguish their title by conveying to his lessor.   (*Baker* v. *Pratt, supra.*)

It is furthermore claimed on behalf of appellant, that the appellee waived his right to forfeit the lease.   It is said, that, after appellee's right to forfeit the lease accrued on August 21st, 1889, he waited until the 13th day of September thereafter before taking any steps towards forfeiture, and in the meantime permitted appellant to do work upon the building.   At common law, where a lease contained a condition for re-entry for non-payment of rent, the law required a demand of the precise amount of the rent due, and that it be made upon precisely the day when due and payable by the terms of the lease.   Under this strict rule, it may be that the appellee, in order to work a forfeiture of the lease, would have been obliged to make a demand for the rent on the 21st day of August.   But we have held in a number of cases, that the common law rule, making it necessary to demand the rent on the day it falls due in order to cause a forfeiture, was abrogated by section 2 of the Act of 1865, which is now section 9 of the Act in regard to Landlord and Tenant.   (2 Starr & Cur. Ann. Stat., chap. 80, p. 1494; *Chadwick* v. *Parker,* 44 Ill. 326; *Dodge* v. *Wright,* 48 id. 382; *Chapman* v. *Kirby,* 49 id. 211; *Leary* v. *Pattison,* 66 id. 203; *Burt* v. *French,* 70 id. 254; *Woodward* v. *Cone,* 73 id. 241.)   The mere fact, that the landlord did not forfeit the lease on the very day on which the monthly installment of rent fell due, did not deprive him of the right to declare a forfeiture on some subsequent day.

But it is said the appellee knew, that the lessees were making repairs and improvements upon the property

during the period from August 21st to September 13th, and that, by suffering them to do so without attempting to forfeit the lease, there was thereby a waiver of his right of forfeiture as against appellant. A statute, which confers a lien upon the leasehold interest, must be construed with reference to the common law rule, that the burden of repairs is cast upon the tenant, and that the landlord is under no implied obligation to make them. (2 Jones on Liens, sec. 1276.) The estate of the lessor can not be subjected to a lien for work done or materials furnished under a contract with the lessee, unless the agreement or consent of the lessor is shown, or unless he has done some act to make his estate liable. (15 Am. & Eng. Enc. of Law, page 19, and cases cited in notes; 2 Jones on Liens, sec. 1276.) Where a lessor agrees to pay to the lessee a gross sum towards the erection of a house on the demised premises, the estate of the lessor is bound by the mechanic's lien. (*Leiby* v. *Wilson,* 40 Pa. St. 63; *Boteler* v. *Aspen,* 99 id. 313.) We have recently held in *Henderson* v. *Connelly,* 123 Ill. 98, that, where a contract of sale of land did not authorize or in any manner empower the purchaser to erect a building on the premises, or to incur any liability for the improvement thereof, and the vendor was in no manner connected with the building the purchaser erected on the premises, but merely sold the lot leaving the purchaser to improve it or not as he pleased, under such circumstances the lien of the mechanic would only attach to such title as the purchaser had; but that, if the vendor in the contract authorizes and empowers the purchaser to erect a building on the premises and advances money to aid him in the improvement, the mechanic, who has furnished labor and materials before the termination of the contract by notice, will be entitled to subject the vendor's legal title to the lien.

In the present case the lease does not provide for making any improvements, and contains no provisions, which con-

nect the lessor in any way with any improvements to be made by the lessees. Nor does the lease show, that the lessor gave his consent to the making of any improvements, or agreed to make, or to aid in making, them. The proof is not clear, that the appellee had knowledge of the labor and materials furnished by appellant during the progress of the work. Appellee's agent, who negotiated the lease and received payment of the first installment of the rent, was absent from the city of Chicago from August 8th until the 7th or 8th day of September.

The general rule is, that "any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture." ( *Webster* v. *Nichols*, 104 Ill. 160.) We fail to discover any such act done by the appellee between August 21st and the forfeiture of the lease on September 13th. Beyond the mere fact that the second installment of rent was not promptly paid, there is no evidence that appellee had any knowledge, until a few days before his re-entry, of the inability of the lessees to pay for the repairs ordered by them. Although a lessor may be aware, that the premises are undergoing repairs under the direction of the lessee, yet, if he has no reason to believe that such lessee is not able to pay his debts, he is not obliged to assume that the persons employed to do the work will not receive their money from the lessee, and that an immediate forfeiture is necessary to save himself from liability. The proof tends to show, that appellee did not know of the contract between Bartels and appellant until about the 10th day of September.

Counsel for appellant refer us to a large number of cases, holding that a grantor entitled to re-enter or forfeit an estate on breach of condition, who does not exercise this right when facts within his knowledge occur that would entitle him to do so has waived his right; but the facts in these cases show, that there were long continued acts or

declarations in recognition of the estate sought to be forfeited; and it was held that the grantor was estopped from exercising his right of forfeiture, because, by his failure to assert the right after breach of condition, he induced the grantee to believe that he would not do so, and to continue in the prosecution of an enterprise requiring the expenditure of large sums of money. We find no fault with the doctrine of these cases, but think that they have no application here, where the lessees and the holder of the lien were given an opportunity to avoid the forfeiture, and were fully advised in due time of the lessor's intention to exercise the right of forfeiture.

It is further claimed, however, that, if appellant was not entitled to a mechanic's lien, he is entitled to the enforce- of an equitable lien against appellee's legal title to the property. This seems to have been the theory upon which the decree of the court below was based. An equitable lien is sought to be sustained upon the alleged ground, that appellant was induced to believe, by the agent of appellee, that a new lease of the premises would be executed to him after the old lease to Bartels, Crelly and Luits should be forfeited. Upon the question of fact whether appellee's agent made a promise to give a new lease, or held out any representations that he would give a new lease, upon which appellant was authorized to rely, we are inclined, after a careful re-examination of the evidence, to adhere to the conclusion announced upon the former hearing. We are not satisfied that any such promise was made, or that any such representations were held out. The agent denies positively, that he said or did anything to induce appellant to complete the performance of his contract with the lessees, or to induce him to believe that the premises would be relet to him. Appellant himself admits, that the agent declined to make any promises, but stated that he intended to cancel the lease, and, after he had done that, he would then determine whether he would make another lease or not.

Counsel for appellant say in their brief, that this suit is not brought to declare and enforce a vendor's lien, nor a lien created by estoppel, but they claim that an equitable lien was created by the acts of the parties. They furthermore say: "It is not claimed that appellee fraudulently acquiesced in the work during its progress, but that appellee was guilty of fraud after its completion, making it inequitable for appellant to hold the property free from the equitable lien asked for."

The theory of equitable liens has its ultimate foundation in contracts, express or implied, which deal with, or in some manner relate to, specific property. (3 Pom. Eq. Jur., sec. 1234.) There was here no express contract between appellant and appellee, nor do we think that there is any implied contract to pay for the repairs or improvements. As a general rule, improvements of a permanent character, made upon real estate, and attached thereto, without the consent of the owner of the fee, by one having no title or interest, become a part of the realty and vest in the owner of the fee. (*Mathes* v. *Dobschuetz*, 72 Ill. 438.) In equity, where one makes improvements innocently, or through mistake, upon the land of another, he will not ordinarily be allowed to enforce a claim for reimbursement, *as an actor*; but when the true owner seeks relief in equity, as, for instance, to set aside a sale of the land on which the improvements have been made, or to obtain an accounting for rents and profits, he may be required to make compensation for the improvements upon the principle, that he who seeks equity must do equity. (*Ebelmesser* v. *Ebelmesser*, 99 Ill. 541; 3 Pom. Eq. Jur., sec. 1241 and note.) Even in such case, compensation will only be allowed for the increased value caused by the improvements. (*Ebelmesser* v. *Ebelmesser*, *supra*.) Courts of equity will not grant active relief, and sustain a bill to recover for such enhanced value, after the true owner has recovered the premises at law. (2 Jones on Liens, sec. 1136.) In proceedings instituted by the

real owner, it must appear, that the party making the improvements did so under a claim of title which turned out to be defective, or under some mistake concerning his rights, or because he was induced to incur the expenditures through the fraud or deception of the owner. (3 Pom. Eq. Jur., sec. 1241, note 1.) Here, the repairs were made for a party known to be the owner of only a leasehold estate, presumably in reliance upon the statutory mechanic's lien, and not through confidence in a defective title, or through mistake, or through the fraud of the owner of the fee.

Counsel have called our attention to the case of *Perry* v. *Board of Missions*, 102 N. Y. 99. In that case there was a special agreement embodied in the resolution of a corporate body to pay the moneys advanced for the repairs. It is there announced as a general doctrine of equity, that a lien will be given when the plaintiff's right can be secured in no other way. This is carrying the doctrine of equitable liens farther than the courts of the other States have gone in that direction. (*Crane* v. *Caldwell*, 14 Ill. 468; *Dewey* v. *Eckert*, 62 id. 218.) It appears, however, in the *Perry* case, as it does not appear here, that the owner of the property expressly authorized the party making the repairs to proceed with them, directed a mortgage to be executed to raise money to pay for them, approved of them after they were made, accepted them "not as a gratuity, but as services for which compensation should be given;" and that the party, in whose favor the equitable lien was enforced, advanced his own money to pay the bills incurred for the improvements at the request of the officials of the corporate body; and that his right to remuneration was clear. We do not regard the decision in that case as a precedent which should control the disposition of the case at bar. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*