THE CAREY-LOMBARD LUMBER COMPANY

*v.*

J. RUSSELL JONES *et al.*

*Opinion filed October 19, 1900.*

1. MECHANICS' LIENS—*lease authorizing lessee to erect building is not a building contract.* A lease providing for the erection of a building upon the demised premises by the lessee, which is to become the property of the lessor upon the termination of the lease, is not a building contract nor is the lessee a contractor, within the meaning of the Mechanic's Lien act.

2. SAME—*lessor authorizing lessee to erect building subjects his title to mechanic's lien.* A lessor who stipulates in the lease for the erection by the lessee of a building upon the demised premises, which is to become the property of the lessor upon the termination of the lease by expiration or otherwise, subjects his title to mechanics' liens arising from the erection of the building, notwithstanding the lease provides, under penalty of forfeiture, that the lessee shall permit no mechanics' liens to attach to the premises.

*Jones* v. *Carey-Lombard Lumber Co.* 87 Ill. App. 533, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Appellant was petitioner in the circuit court of Cook county to enforce a lien against city lots in Chicago, owned by appellee J. Russell Jones, for lumber furnished to construct certain improvements thereon. Appellee Jones, and Elizabeth, his wife, together with T. C. Kane and David Meyer, were made defendants to the petition. Jones and wife alone answered, and upon replication a hearing was had, resulting in a decree in conformity with the prayer of the petition. On appeal the Branch Appellate Court for the First District reversed that decree and remanded the cause, with directions to dismiss the proceeding. This appeal is from that judgment.

The petition sets forth that the petitioner, on April 16, 1890, entered into a contract with the defendants Kane

and Meyer to furnish building materials for the erection of buildings on the lots, a copy of the agreement being attached, marked exhibit "A." By an amendment to the petition it is averred that the said Kane and Meyer at the time held a lease on the lots from Jones, a copy being attached, marked exhibit "D." It is also averred that buildings were erected in accordance with the terms of said lease, which became the property of Jones; that on December 1, 1896, Jones declared said lease forfeited and entered into possession, renting the same to other parties for an annual rental of $1762.50, being $262.50 in excess of the rent reserved in the lease to Kane and Meyer, and that the latter thereupon became and ever since remained insolvent.

Exhibit "D," the lease alleged to have been entered into between Jones and Kane and Meyer, bears date February 5, 1896, and the material parts of it, for the determination of the questions here involved, are as follows: The first clause is a contract in the usual form, for the leasing of the property from the first day of May, 1896, for a term ending April 30, 1901. The next clause provides for the payment of rent at the rate of $1500 per annum, payable by installments, as stated. The next clause is as follows:

"It is further expressly understood and agreed that the said party of the second part shall, within four months from the date hereof, erect upon said premises buildings and other permanent improvements to cost not less than the sum of six thousand dollars ($6000), the plans and specifications for which said improvements are to be submitted to the said party of the first part for his approval before the work thereon shall begin, and no buildings or other improvements of any kind shall be placed on said premises without first obtaining, in writing, such approval of the plans thereof by said party of the first part. It is further understood and agreed that all buildings, fences, walks and improvements, of every kind and

nature whatsoever, so erected or placed on said premises by the said party of the second part, shall, when placed thereon, become immediately a part of the realty and the property of the said party of the first part, and that. upon the termination of this lease, either by limitation or otherwise, such buildings and improvements of every kind which shall have been placed upon said premises by said parties of the second part are to be at once delivered into the possession of said party of the first part, together with the ground herein demised. * * * It is further understood and agreed that should said party of the first part desire to use the premises herein demised at any time after the expiration of the first year of the term hereof, for the purpose of erecting buildings thereon, or any other purpose, he shall have the right to terminate the said term upon first giving ninety days' written notice unto said parties of the second part of his intention so to do, and upon the payment to said parties of the second part, should such termination occur, pursuant to the right in this clause given, at any time during the second year of the term hereof, the sum of $4800; or should such termination occur at any time during the third year of the term hereof, the sum of $3600; or if at any time during the fourth year of the term hereof, the sum of $2400; or if at any time during the fifth year of the term hereof, the sum of $1200. It is further understood and agreed that for the cost of any of the buildings or improvements which may be made by the parties of the second part during the term of this lease they shall permit no mechanics' liens to attach to said premises, and that should said parties of the second part fail to keep this agreement, and the said party of the first part be obliged, in order to protect said premises, to pay off and discharge any such mechanics' liens, he shall have the right forthwith to terminate the term hereof, upon thirty days' notice to said parties of the second part, in writing, of his intention so to do. It is further under-

stood and agreed that the said second parties are to have the right, at any time subsequent to the execution hereof and prior to the beginning of the term of this lease, to enter upon said premises for the purpose of erecting or constructing such buildings and improvements as are herein contemplated, and that for such period as they may so hold possession of said premises prior to the beginning of the term of this lease they shall not be required by said party of the first part to pay any rent."

It is next provided that the lessees shall keep all buildings and improvements placed upon the premises insured in the name of the lessor, for their full insurable value, and in default thereof the lessor may insure the same for himself, charging the same to the lessees. Other provisions relate to paying water tax; keeping the premises in a clean and wholesome condition, in accordance with the ordinances of the city and the directions of its health officers; that premises shall not be underlet, etc.

The claim of the petitioner is for $1111.47, with interest from November 25, 1896, amounting in all to $1219.84, for lumber and materials funished for the erection of the buildings. It is averred that on November 28, 1896, the petitioner filed with the clerk of the circuit court of Cook county a statement in writing setting forth the amount due, with a correct description of the property.

The answer of the defendants Jones and wife, as shown by the abstract, admits all the material allegations of the amended petition except the averment that after the forfeiture of the lease by Jones the premises were leased to other parties for an annual rental of $1762.50, or any sum in excess of the rent reserved in the forfeited lease, and denies that petitioner is entitled to interest upon its claim, and denies generally that the petitioner is entitled to the relief prayed.

JAMES H. HOOPER, for appellant.

GREEN, HONORE & PETERS, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Section 1 of the Mechanic's Lien law of this State in force June 26, 1895, (Hurd's Stat. 1897, p. 1034,) provides: "That any person who shall by any contract with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to improve the same, furnish or specially manufacture and prepare materials, fixtures, apparatus. or machinery for the purpose of, or in building, altering, repairing or ornamenting any house or other building, * * * shall be known under this act as a contractor, and shall have a lien upon the whole of such tract of land or lot and upon the adjoining or adjacent lots of such owner constituting the same premises, * * * for the amount due to him for such material, fixtures, apparatus, machinery, services or labor, and interest from the date the same is due."

The very gist of the petitioner's case, as made by the averment, is, that it contracted to furnish the materials for which it claims a lien with parties (Kane and Meyer) whom the owner (J. Russell Jones) had "authorized or knowingly permitted to improve" the premises. If that allegation is not either admitted, or proved by the petitioner, its case must fail; but if admitted by the answer or established by the evidence, then by the plain provisions of the statute its right to a lien is established to the whole of the premises, to the same extent as though the agreement under which the lumber was furnished had been made with the owner himself. Conceding there was upon the hearing an issue of fact as to whether there was such authority or permission, as counsel for appellees assume there was, and also conceding that without a bill of exceptions or certificate of evidence we are not to presume, in support of the decree, that evidence was heard outside of the contract of leasing between the lessor and lessees, and looking to that contract alone, the petition is, in our opinion, amply sustained.

We understand counsel for appellees to contend that by the terms of the lease Kane and Meyer became original contractors for the erection of the buildings and the improvements placed upon the lots, and that the lumber company was at most but a sub-contractor under them. Extended arguments are submitted on either side of these propositions, but we regard them of very easy solution. It cannot be seriously claimed that under the agreement the lessees contracted with Jones to furnish materials or perform any of the labor or services named in the foregoing section of the statute, by the doing of which they would, by that section, be known as "*a contractor.*" The statute is, as its title indicates, for the security of mechanics and those who furnish material for buildings, etc., therein named. Agreements made under its provisions are known in the law as building contracts, sometimes termed "working contracts." The clause in the lease which obligates the lessees to erect improvements upon the leased premises is in no sense a building contract. That clause means no more than that by the terms of the lease the tenants are to cause to be made such improvements as the landlord shall approve of, not to exceed in value $6000, that sum to be re-paid by the landlord, either in the use of the premises, or in money, if he should decide to cut short the term of five years, the improvements to be a part of the real estate and to belong to him.

A contractor has been defined to be "one who, as an independent business, undertakes to do specific jobs of work without submitting himself to control as to the petty details." (3 Am. & Eng. Ency. of Law, 822.) It would scarcely be contended that under the provisions of our statute there could be such a thing as a sub-contractor's lien unless there existed a lien in favor of an original contractor, and we assume that no one would contend that Kane and Meyer, under their contract with Jones, could have enforced a lien against the leased prop-

erty for any improvements placed upon it by them under this agreement.   Similar contracts have been before the courts in proceedings to enforce mechanics' liens, and have, without exception, so far as we are advised, been held to amount to authority or consent from the owner to a vendee or lessee to make the improvements, and, in the absence of some stipulation in the agreement to the contrary, to give a lien upon the interest of the owner for materials furnished or labor performed under contracts with the vendee or lessee.   In fact, it is impossible to see how it can reasonably be said that one who agrees with another that he shall place buildings or other improvements upon certain property does not thereby "authorize or knowingly permit" the other to improve that property.

The case of *Henderson* v. *Connelly*, 123 Ill. 98, was one in which the Hendersons sold to one Sharp certain premises, the former agreeing that when Sharp should have expended $325 in the erection of a dwelling house on the premises they would advance him, as the progress of the building justified in their opinion, $875 to aid in its completion.   Sharp contracted with Connelly to do certain work upon the building, which he did.   Sharp having failed to comply with his contract of purchase, the Hendersons took possession of the property and completed the house.   Connelly sought to enforce a lien upon the premises for the labor performed by him, and the Hendersons resisted that claim.   The decree was in favor of the petitioner, and directed the master to sell the property, and after paying the costs to pay, first, the amount due the petitioner, and the surplus to the Hendersons. On appeal the latter insisted the decree was erroneous in that it did not give them priority, at all events, for the contract price of the property, relying on *Hickox* v. *Greenwood*, 94 Ill. 266.   Holding the position not well taken and the case relied on not in point, we said (p. 102): "Here it was understood in the contract of sale between

187—14

the vendors and purchaser that the latter should go on and build upon the premises, and for the purpose of a consummation of this understanding a clause was inserted in the contract of sale by which the vendors agreed to advance the purchaser $875 to assist him in the erection of a building on the premises, as the building progressed. The only reasonable and fair construction to be placed on this clause of the contract is, that the purchaser was authorized and empowered by the vendors to enter into contracts with builders to furnish material and erect a building on the premises to which they held the legal title." The doctrine of this case is recognized as being applicable to cases of leasing as well as sales in *Williams* v. *Vanderbilt,* 145 Ill. 238, where we said: "Where a lessor agrees to pay to the lessee a gross sum toward the erection of a house on the demised premises, the estate of the lessor is bound by the mechanic's lien,"—citing *Leiby* v. *Wilson,* 40 Pa. St. 63, and *Boiler* v. *Aspen,* 99 id. 313.

In *Lumber Co.* v. *Nelson,* 71 Mo. App. 110, the case is stated and decided as follows: "One of the stipulations in the lease from Nelson was that the lessees should expend $20,000 in making improvements upon the leased premises, according to plans and specifications which had been agreed to. These improvements were to become the property of the lessor at the termination of the lease. In this state of the evidence it may be truthfully said the improvements on the Nelson lot, and the material necessary to make them, were made and furnished by his consent and for his benefit. He not only consented to them, but contracted with his lessees for them. The improvements were made and the material furnished under a contract authorized by him, and he must be held to have subjected his title in his lot to the plaintiff's lien, if the lien is otherwise valid.—*O'Leary* v. *Roe,* 45 Mo. App. 567; *Hall* v. *Parker,* 94 Pa. St. 109; *Barclay* v. *Wainright,* 86 id. 191; *Burkett* v. *Harper,* 79 N. Y. 273; *Hill* v. *Gill,* 40 Minn. 441; *Henderson* v. *Connelly,* 123 Ill. 98." This we regard as

a clear statement of the law, even under statutes without the provision in our act of 1895, "or with one whom such owner has authorized or knowingly permitted to improve," etc., and fully sustained by the authorities cited and numerous other decisions.    See *Schmalz* v. *Mead*, 125 N. Y. 188, and cases cited; *Miller* v. *Mead*, 127 id. 544; *Burkett* v. *Harper*, 79 id. 273; *McCue* v. *Whitwell*, 156 Mass. 205.

It is urged, however, that the authority given by this lease was, at most, but a limited or qualified authority, and therefore not within the meaning of the statute. This position is based upon that part of the lease which says that for the cost of any of the buildings or improvements which may be made by the parties of the second part they "shall permit no mechanics' liens to attach to said premises," etc.    Counsel construes this language to mean that the tenants had only authority to make improvements by stipulating, in any contracts therefor, that no mechanics' liens should attach.    But with this construction we cannot agree.    The clause, taken as a whole, does contemplate that a contract may be made which would be binding between a mechanic or materialman and the owner authorizing a lien, but requires, as between himself and the lessees, that they shall not permit the lien to attach,—that is, that they shall pay off the liabilities and thereby prevent the enforcement of a lien.    The latter part of the clause clearly shows that the owner anticipated that that part of the agreement might not be performed by them, and he therefore protected himself from loss by reserving the right to declare a forfeiture and take the property.    It seems to us very clear that under the terms of this lease the rights of the petitioner must be held to be the same, in every respect, as though the contract for the building material had been made directly with appellee Jones.    In this view the lien attaches to the whole of the property,—the owner's title. It is his contract,—not that of the lessees,—and he gets the full benefit of it.

Both by the terms of the contract and the statute the petitioner is entitled to interest on this claim from the time it became due.

In our opinion the decree of the circuit court is in conformity with the law and facts of the case. The Appellate Court erred in reversing the decree, and its judgment will accordingly be reversed and the decree of the circuit court will be affirmed. The cause will be remanded to the latter court, with directions to carry into effect its decree.                                    *Reversed and remanded.*