John McNicholas et al. v. William H. Tinsler et al.
Irving W. Kelley et al. v. Warren Springer.
A. Campbell et al. v. Warren Springer.

Gen. Nos. 12,516, 12,517 and 12,518. Consolidated for Hearing.

1. TRANSCRIPT OF RECORD—*effect of, where prepared as per præcipe.* Where the transcript of the record has been made up by the clerk as *per præcipe* filed with him, the court, in considering whether the decree appealed from should be reversed, will consider what might have been the effect if the documents and orders omitted were contained in such transcript, and if the omitted documents and orders might have justified the decree in question, a reversal will not be ordered.

2. TRANSCRIPT OF RECORD—*effect of omission of master's report.* Where it appears by the transcript filed on review that a master's report of testimony taken is on file in the lower court and is not reproduced in such transcript, it will be presumed that such report contained evidence which justified the decree of dismissal for want of equity, sought to be reversed.

3. DISMISSAL FOR WANT OF EQUITY—*when order of, will not be reversed.* Where a decretal order in a chancery suit does not constitute affirmative relief, but is a dismissal of the bill for want of equity, the complainant, to secure a reversal, must preserve the evidence and show that it justified the relief prayed, else it will be presumed that the chancellor was justified, by the want of proof, in his disposition of the cause.

4. REVERSAL—*what not sufficient to justify.* The expression of wrong reasons will not justify a reversal; if the decree sought to be set aside is in its conclusions correct, the reasons given therefor will be disregarded.

5. MECHANIC'S LIEN—*claim essential under act of 1895.* The filing of a claim for lien within four months after the last payment became due and payable, is essential to the enforcement of a mechanic's lien under the act of 1895, even when the sole party defendant in interest is the owner of the land sought to be charged with the lien.

6. MECHANIC'S LIEN—*what act governs enforcement of claim.* The act in force at the time the contract in question in the case was made, is the law which governs the enforcement of the right.

7. MECHANIC'S LIEN—*when petition insufficient.* *Held,* in this case, that the particular allegations of the petition were not sufficient to justify the conclusion, when such petition was tested by demurrer, that the defendant named therein was the owner of the property sought to be charged.

8. LACHES—*how question of, may be raised.* The question of *laches* may be considered by the court upon determining whether a demurrer should be sustained.

Mechanic's lien proceeding. Error to the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed June 14, 1906.

J. A. Coleman, for plaintiffs in error; Edward Maher, of counsel.

Douglas C. Gregg, for defendants in error.

Mr. Justice Brown delivered the opinion of the court.

These three cases, having been consolidated for hearing upon one abstract and set of briefs, will be disposed of in one opinion.

They grew out of contracts made in 1895 and 1896 in contemplation of the erection of a large mill construction building, of a value of not less than $150,000, on land belonging to Warren Springer in the city of Chicago.

The record in each of the three cases is made up in accordance with the *praecipe* of the respective plaintiffs in error. For convenience we shall in this opinion call the cases respectively the McNicholas case, the Kelley case, and the Campbell case.

In the McNicholas case the record contains process on an original bill of complaint in chancery filed by Vincent Bowerman against Warren Springer, A. Campbell and F. H. Campbell, copartners, and DeWitt Hubbard. The process shows service on Springer and F. H. Campbell in June, 1896. Then there is another writ on Bowerman's amended bill shown as served on additional defendants Orville Peckham and Harry R. Leib, and a further writ purporting to be issued on a certain bill of complaint of Vincent Bowerman, and shown as served on January 7, 1897, on William H. Tinsler, who is described in the writ as impleaded with J. F. Morris et al. Then follows an "Engrossed Amended Answer in the nature of an Intervening Petition and Cross-Bill of Roswell W. Weld and Daniel T. Donovan, partners doing business as R. W. Weld & Co., and John McNicholas," filed February 17, 1903, and entitled as in the case of "Vincent Bowerman v. A. Campbell et al." and "R. W.

Weld et al. v. Wm. H. Tinsler et al." In said "Answer
and Intervening Petition" are inserted what purport to be
copies of various documents alleged to exist:

First. A lease from Warren Springer to William H.
Tinsler of certain lots in S. W. Rawson's subdivision of
block 17 in School Section Addition to Chicago, for ninety-
nine years from May 1, 1896, for an annual rental varying
from $6,000 to $10,000 a year. There is a covenant in the
alleged lease that the lessee will erect, finish and complete
at his own expense upon the said premises a mill construc-
tion building, and have the same ready for occupancy and
fully paid for and free from all mechanics' liens on or before
September 1, 1896; the said building to be worth not less
than $150,000. The usual provisions concerning forfeiture
of the lease if the covenants for the payment of rent are
not fulfilled are contained in the lease. This lease purports
to have been executed March 21, 1896, and to have been re-
corded on May 26, 1896, in the records of Cook county.

Second. An agreement between Warren Springer and
William H. Tinsler, bearing date also of March 21, 1896,
reciting the alleged lease, and providing, among other
things, that Springer should loan Tinsler $10,000 in install-
ments of $1,000 each, as certain portions of the stipulated
building are shown to have been completed with liens
waived. Tinsler agrees to give Springer for the sums so
loaned his promissory notes for each and all of the sums so
loaned, to bear interest and to run a year and a half, and
to be secured by a mortgage upon the leasehold interest of
said Tinsler in said property mentioned in the lease, Sprin-
ger agreeing to release said mortgage, provided Tinsler
places a loan on said leasehold interest, and to accept a
second mortgage subject only to a first mortgage for such
loan, or to accept an assignment of the lease of said build-
ing, at the election of said Springer, to secure the payment
of the $10,000 described and any other moneys that may
be loaned by said Springer to Tinsler.

Third. An agreement between Warren Springer and
William H. Tinsler, bearing date of April 20, 1896, reciting

the execution of the lease and the before described agreement, and providing that the agreement should be amended as follows: In place of the payment of $10,000 by Springer, said Springer agrees to pay one Frank H. Novak as attorney and agent for Tinsler and the contractor, whoever he may be, for the construction of said building, such sums of money as may be necessary to pay for the necessary labor that may be contracted for by Tinsler or his contractor; said sums to be advanced every two weeks as the pay roll is made up; the first sum to be paid after said Tinsler and his contractor have had one pay day and paid the laborers for at least two weeks' labor on said building; the payments thereafter to be made every two weeks as the work progresses; and it is agreed that Novak shall pay out said sums of money by him received on a pay roll O. K'd by the contractor and owner and approved by Springer, and upon such payment shall take waivers of liens or receipts for the amounts of moneys by him so paid. And it is agreed that $10,000 of the money so advanced by Springer shall be secured by second mortgage on said leasehold interest as specified in the agreement of March 21, 1896, and the further sums, if any, advanced by Springer over and above said $10,000, shall be evidenced by orders given by the owner to said Springer on the "Loan Company"; that he (the owner) has placed a loan of $100,000 on the premises, and the orders are to be paid by said loan company as follows: One-half out of the first $50,000 paid by said loan company when the roof is on the building, and the balance when the final payment is made and the building finished.

Fourth. A letter from Warren Springer under date of April 21, 1896, agreeing to add $500 to the amounts specified to be loaned " in the contract of March 21, 1896."

Fifth. A proposition dated April 30, 1896, signed by McNicholas and accepted by indorsement thereon by Wm. H. Tinsler, to complete certain excavating on the premises in question for $1,400; the job to be finished by June 4, 1896, payments to be made every two weeks of seventy-

McNicholas v. Tinsler.

five per cent. of the amount of the then completed work—balance on completion of the entire excavation.

Sixth. A bond executed by Tinsler and McNicholas to Springer, for $1,000, conditioned that McNicholas should complete the contract for excavating with Tinsler in accordance with its terms and furnish Springer releases of liens for all work done on account of it.

Seventh. A notice from McNicholas to Tinsler, dated May 29, 1896, that unless Tinsler pays McNicholas in accordance with his contract, McNicholas will discontinue his work under the contract and enforce his lien for the value of what he has done and damages.

The said "Answer and Intervening Petition" contains also what purports to be copies of documents in existence in relation to a certain contract of Roswell W. Weld and Daniel T. Donovan, as follows :

Eighth. A contract dated May 15, 1896, between R. W. Weld & Co. and William H. Tinsler for the carpenter and mason work (except excavation and plastering) for the proposed building before described.

Ninth and tenth. Letters or certificates from one A. D. Lieb to Tinsler, reciting that the latter had applied for and been awarded a loan of $100,000 on the property before described, the recital of acceptance being of the date of June 4, 1896.

Eleventh and twelfth. Two orders in favor of Weld & Co. One is for $74,300 drawn by Tinsler on Lieb, dated June 4, 1896, and ordering the said money paid out of the loan for $100,000 on leasehold of part of lots 33 and 34, etc., $5,000 when the building is erected according to the plans and specifications as far as the contract for carpenter work and mason work is concerned and the roof is on, and $24,300 when the building is entirely completed; this order being accepted by Lieb. The second order is drawn by Tinsler on Warren Springer, ordering the payment of $8,000 "out of the loan of $10,000 made me by you," in installments of $1,000 as the building progresses, and waivers or

releases of mechanics' liens are produced. This order is accepted by Springer.

Thirteenth. A statement of R. W. Weld & Co. to Tinsler of various bids received by them for material for the building.

Fourteenth. A notice dated June 9, 1896, from R. W. Weld & Co. to Tinsler, that unless Tinsler complies with his contract of May 15, 1896, Weld & Co. will discontinue work and enforce their lien for the value of what they had done and damages.

Fifteenth. A statement dated June 8, 1896, and filed in the office of the clerk of the Circuit Court of Cook County, June 13, 1896, to the effect that on May 15, 1896, Tinsler "with the knowledge, permission and authority of Warren Springer, owner" of the premises heretofore described, made a contract with said Weld & Co. to furnish labor and material for and do the carpenter and mason work (except excavation and plastering) necessary for the completing of a seven-story and basement building to be erected on said real estate; that the amount to be paid therefor was $82,300; that no definite time was fixed in said contract when the same was to be completed, it being understood, agreed and implied, however, that the same should be completed within a reasonable time, to wit, within a year from the date thereof, and that final payment was to be made on completion of the contract.

Sixteenth. (As Exhibit A to the "Engrossed Amended Answer".) An amended "Statement" dated October 15, 1901, and filed with the clerk of the Circuit Court of Cook County November 5, 1901, in which the words, "that no definite time is fixed in said contract when the same is to be completed" were stricken out, and it is asserted that the contractors were obligated to complete the work by November 1, 1896.

Seventeenth. A release by Harry R. Lieb, trustee, dated July 31, 1896, and recorded June 10, 1897, of the trust deed of Tinsler and wife to him of the date of March 21, 1896.

"The Engrossed Amended Answer in the nature of an

Intervening Petition and Cross-Bill" of Weld and Donovan and McNicholas, of which these various documents really form the frame work, contains also averments of fraud on the part of Springer committed, it is alleged, with the purpose of securing the improvement of his land with but trifling cost to him, in pursuance of which design he imposed on Tinsler and on Weld and Donovan and on McNicholas, and procured the execution of several of the documents detailed. It is alleged that Tinsler acted as "the mask, alias and agent" of Springer in entering into the contracts described, and that the alleged proposed loan to be made by Lieb was a false pretense. It is also alleged that Springer was a real, but undisclosed, principal in the petitioner's contract with Tinsler; that the petitioner McNicholas has done all the work to be done by him under the contract; that Tinsler and Springer are indebted to him in the sum of $1,400 with interest, and that he is entitled to a mechanic's lien therefor on said premises. Also that by breach of the contract on the part of Tinsler and Springer the petitioners Weld and Donovan have been damaged to the extent of $36,132, in which amount Tinsler and Springer are indebted to the petitioners Weld and Donovan, and for which amount the petitioners Weld and Donovan are entitled to a mechanic's lien on the before described premises.

The "Answer and Intervening Petition" then closes with a prayer for judgments and decrees of sale in favor of McNicholas, and of Weld and Donovan, respectively, against Tinsler and Springer and the premises described.

The only other matter in the transcript of record in the McNicholas case is the decree which was entered in the chancery cause in the Circuit Court of Cook County, numbered 158,415, and which is entitled as in the causes:

VINCENT BOWERMAN
vs.                          } Bill.
ARCHIBALD CAMPBELL ET AL.

ARCHIBALD CAMPBELL ET AL.
vs.                          } Answer and Cross-Bill.
HUBBARD ET AL.

| Irving W. Kelley et al.<br>vs.<br>Charles E. Bartlett et al. | } | Answer in the nature of an Intervening Petition and Cross-Bill. |
|---|---|---|
| McNicholas et al.<br>vs.<br>Tinsler et al. | } | Joint and Several Answer in the nature of an Intervening Petition and Cross-Bill. |
| Harrower, Assignee, etc.,<br>vs.<br>Tinsler et al. | } | Answer in the nature of an Intervening Petition and Cross-Bill. |

The decree recites that "the cause" came on to be heard "upon all the petitions and cross-bills, answers and amendments thereof and replications thereto, and upon the master's report of the testimony taken by him under the order of reference, and upon the depositions, exhibits, objections and stipulations of the several and respective parties returned with said master's report and the proofs taken in said cause, oral and documentary, and the stipulations and admissions of the solicitors of the several and respective parties in open court in the presence of the chancellor, for the respective parties."

The decree dismisses the original petition and all amendments of Bowerman, finding, "under the allegations of his amended bill and upon the evidence produced upon the hearing of the cause," that he had failed as subcontractor to comply with the Mechanic's Lien Law by filing his petition or commencing his suit in time, and then proceeds: "The court further finds *from the intervening petition of Roswell W. Weld and Daniel T. Donovan as amended on February 17, 1903*," certain things.

In effect this finding follows the allegations of the petition above set forth, and asserts that Springer made the lease to Tinsler knowing him to be financially irresponsible and unable to erect the building provided for in it without defrauding the mechanics, material men and laborers; that he conspired with Lieb to falsely represent that a loan had been made on the premises which would be paid to the contractors; that no loan was made and Tinsler was unable to pay for or erect the building pro-

vided for; that the contracts set forth in the petition were made between Tinsler and McNicholas and between Tinsler and Weld and Donovan; that McNicholas performed the largest part of the excavation provided for in his contract, but that the building was never erected, because of the failure of Tinsler to provide for the payments set forth in his contract with Weld and Donovan.

There is a finding that on May 27, 1898, R. W. Weld & Co. filed "in this cause their intervening petition claiming a mechanic's lien for the value of what they had done and the profits which would have accrued to them had the said building been erected, and that on February 17, 1903, said intervening petition was amended."

Also that on the 27th day of May, 1898, McNicholas filed an intervening petition in the cause, praying that he might be allowed a lien against said premises for that part of the work performed by him.

The following paragraphs of the decree are the disposing part of the same:

"The court further finds from the evidence and from the express agreement of the parties to this cause, made in open court, that at no time did the said Roswell W. Weld and Daniel T. Donovan, doing business as R. W. Weld & Company, file a statement of a claim for a lien, as is required by section 7 of the Mechanic's Lien Law in force at the time said contract of said petitioners was made; and the court, therefore, finds that by reason of the failure of said intervening petitioners to file a statement of a claim for lien they have not brought themselves within the purview of said section 7 of the Revised Statutes, *and the court therefore directs that said petition of said Roswell W. Weld and Daniel T. Donovan, doing business as R. W. Weld & Company, and all amendments thereto be dismissed for want of equity.*"

"The court further finds that at no time did the said John McNicholas ever file a statement of claim for lien as required by section seven (7) of the Mechanic's Lien Law in force at the time of the making of the said contract, and

that by reason of said failure on the part of the said John McNicholas to file said statement, said intervening petitioner, John McNicholas, has not brought himself within the purview of said statute, *and is not, therefore, entitled to a lien against said premises, and his said petition and all amendments thereto are, therefore, hereby dismissed for want of equity.*"

We could not, in any event, from this partial and incomplete record find justification in reversing the action of the chancellor in dismissing the bill. The decree recites that in the cause in which it was rendered there were "answers" to the cross-bills and intervening petitions, "replications", a "master's report of testimony taken by him", "depositions", "exhibits", "stipulations", "proofs", "oral and documentary", and "admissions". None of these are in the transcript. They may have furnished, independently of any of the recitals of the decree, sufficient grounds for dismissing the "Engrossed Amended Answer in the nature of an Intervening Petition and Cross-Bill" of Weld, Donovan and John McNicholas.

The only ordering parts of the decree which it is sought to reverse in this proceeding are those which dismiss the petitions of Weld and Donovan and McNicholas for want of equity.

It is settled that where the decretal order in a chancery suit is not affirmative relief, but the dismissal of the bill for want of equity, the complainant, to secure reversal, must preserve the evidence and show that it justified relief, or else it will be presumed that the chancellor was justified by the want of proof in his disposition of the cause. Atkinson v. The Linden Steel Co. et al., 138 Ill. 187; Thomas v. Adams, 59 Ill. 223. And even were this not so, it furnishes a presumption that there is evidence in the record to sustain the decree that a master's report of testimony taken is on file. Brown v. Miner et al., 128 Ill. 148; Baird v. Powers, 131 Ill. 66.

Plaintiffs in error, however, insist that these considerations cannot avail against their contention, because the decree finds certain facts to be according to the allegations of

McNicholas v. Tinsler.

their "Amended Petition", and by its recitals places the dismissal of that petition on the ground that "at no time did Weld and Donovan or McNicholas file a statement of claim for lien as required by section seven (7) of the Mechanic's Lien Law in force at the time of making of the said contract", and "THEREFORE" they have not brought themselves within the purview of said statute, and "THEREFORE" their petitions are dismissed.

The decree does, indeed, recite that the court finds certain facts involving Springer in a conspiracy to make certain false representations to Weld and Donovan and Mc-Nicholas for the purpose of inducing them to place valuable improvements on his, Springer's, property. These findings would not, in our opinion, by themselves support any of the affirmative relief asked for by the "Amended Petition", but this does not need discussion, for it is to be noted that the decree recites that the court finds these things not from the evidence before it, or even from all the pleadings involving the matter detailed in the petition, but altogether "from the intervening petition of Roswell W. Weld and Daniel T. Donovan as amended February 17, 1903." This kind of a finding is strange to us. Even if it covered completely all the allegations of the "Amended Petition" in question, it could not control or make nugatory or erroneous the order dismissing the petition. It would amount only to a recital of the allegations of the petition, not as proved, but as assumed, and an adjudication that nevertheless no case was made out. This would be regular, it seems to us, only if the record showed that the cause was disposed of on a demurrer to the petition, not, as the decree here recites, on answers, replications and proofs. But although irregular, these "findings" "from the petition" do not render the ordering part of the decree erroneous. Counsel for plaintiffs in error says: "The decree holds that these respective bills were dismissed for the one solitary reason that neither of said parties plaintiff in error had filed a formal claim for lien, and therefore neither had brought himself within the purview of section 7, Act of

1895, their contracts having been made and the work thereunder done while said Act was in force and being governed thereby. This one reason for the court's ruling is clearly and distinctly set out in the decree, and we beg this court to pass upon that one question as squarely made in the decree. Let these respective plaintiffs in error stand or fall on the very and only ground that the court below decreed the dismissal of their bills."

We do not think that we are at liberty so to act. We must consider this record as it comes to us, and if there appears from it as a whole, irrespective of the reasons given in the recitals of the decree for dismissing the petition, no reason for setting such dismissal aside, we ought not to do it. In other words, the mere reasons given by the court, either in opinion or decree, for its action are not of importance in determining our action. They may be wrong, and the order nevertheless be right. In that case we must affirm it. Lord Alvanley in *Ex parte* The Earl of Ilchester, 7 Vesey Jr. 373, declared it in 1803 to be very "uncommon" to express in a decree the "reasons." If this is not the case now, the argument and expressed "reasons" in a decree are no more than then the controlling factor in determining the correctness of its ordering portion. In this case, however, if we should comply with the demand of plaintiffs in error and pass on this matter, solely considering the point urged by the plaintiffs in error that under the law of 1895 it was not a condition precedent to securing the relief prayed for in the "McNicholas petition," that the claim for a lien in the form prescribed by section 7 of that Act should be filed with the clerk of the Circuit Court of Cook County within four months after the last payment became due and payable, our conclusion must be against that contention, and the same as that of the chancellor who tried the cause.

The ingenious argument of the counsel for plaintiffs in error has not convinced us that this court was wrong in its opinion expressed in Christian v. Allee, 104 Ill. App. 178; or that section 7 of the Act of 1895, taken together, does

not require the filing of a lien claim, even "when the sole party defendant in interest is the owner of the land." We cannot regard as lightly, as does counsel, the implication contained in the later words of section 7—" Such claim for lien may be filed at any time after the contract is made, and, as to the owner, may be amended at any time before trial," etc.

It is true, however, as pointed out by counsel, that the Supreme Court in Kendall v. Fader, 199 Ill. 294, decided that the contract involved in Christian v. Allee was wholly governed by the Act of 1887. We do not cite the latter case as a controlling authority on us, but as showing what then was and still is the opinion of this court on the construction of section 7 in the Act of 1895. But even if the contention of plaintiffs in error in this regard, so far as the owner of the premises on which a lien is sought, who is a direct party to the contract, is concerned, be correct, and against such a party to the contract who is owner no claim for lien need be filed, yet this is not, in our opinion, a case in which this proposition can be invoked to aid the petition.

When the owner of a leasehold makes a contract for an improvement, in which contract the owner of the fee does not join, *prima facie* only the leasehold interest of the lessee is rendered primarily subject to a lien. Coleman on Mechanics' Liens, sec. 62; Judson v. Stephens, 75 Ill. 255; Williams v. Vanderbilt, 145 Ill. 238; Hickox v. Greenwood, 94 Ill. 266.

The lessor or owner of the fee having ground rent reserved and means provided in the lease for enforcing the payments by forfeiture of the leasehold interest is, in the sense in which those words are used in section 7, not an " owner," but at most " a creditor or incumbrancer." He is certainly not an owner of the leasehold interest of which he is, however, an " incumbrancer."

It is claimed, however, by plaintiffs in error that in this case, by virtue of the actions and intentions of Springer, he is shown to be the real person in interest in the contract,

not a third party of any kind, but the direct contractor, and in the contemplation of the law the "owner." We have pointed out already the fact that in this record there is no evidence preserved, and also the weakness of the findings of the decree, in that they are said to be made "from the Intervening Petition of Weld and Donovan," which petition the decree would seem to show was answered.

"Pleadings cannot constitute evidence on which a decree can be based, unless the allegations are admitted by answer." Dooley v. Stipp, 26 Ill. 87.

And even as thus made the findings are only that Springer leased the premises for ninety-nine years to Tinsler, knowing Tinsler to be irresponsible, and afterward falsely represented to the petitioners that a loan of sufficient amount would be made to Tinsler to place valuable improvements on his, Springer's, property. We doubt whether these would be, even if recited as made from the evidence, sufficient to place Springer entirely in Tinsler's place as "owner" in the sense of the statute.

The decree of the Circuit Court dismissing the McNicholas petition must be and is affirmed.

Passing now to those cases which we have heretofore denominated the "Kelley case" and "Campbell case," which are, although distinct from each other and from the McNicholas case, consolidated with that case and with each other for hearing in this court, we are met with a somewhat different situation.

In these cases, as in the McNicholas case, the transcripts of the records are made according to *præcipe*. In each case, however, the transcript contains the matters essential to a proper consideration and disposition of the cause. In each case is given the process in the original bill of Bowerman against Springer and others. In the Kelley case is a pleading filed as of January 23, 1903, being "An Answer in the nature of an Intervening Petition and Cross-Bill," a general demurrer of Warren Springer thereto, and a decree sustaining the demurrers and dismissing the "petition" for want of equity.

In the Campbell case is a pleading filed as of January 23, 1903, denominated "Answer and Cross-Bill of A. Campbell and F. B. Campbell," etc., a general demurrer of Warren Springer thereto, and a decree sustaining the said demurrer and dismissing the said petition or cross-bill.

The Kelley petition sets up that the petitioners Kelley and McMullen were on February 19, 1895, copartners as architects; that on that date and up to the filing of the petition Warren Springer was the owner of certain lots described in Rawson's subdivision; that on said date one Bartlett and one Roach were owners of a lease for ninety-nine years from the defendant Warren Springer of said lots, in which lease Bartlett and Roach were obligated and authorized by Springer to construct on said lots a large seven-story building, and to employ architects to prepare plans, etc., therefor, *and in so doing the said defendants Bartlett and Roach were the agents of Springer;* that Springer agreed to aid Bartlett and Roach by loaning and advancing $10,000 to them toward paying for the construction of the said building; that on February 19, 1895, Bartlett and Roach made a written contract with Kelley and McMullen to make plans and furnish professional consultation and architect's superintendence for the construction of the building, within three years from the date of the contract; final payment at the rate of five per cent. upon the cost of the building to be made on the completion of their said work, and in the event that the work was abandoned before completion, the petitioners to be paid $1,500, and the reasonable value of alterations and additions according to the written contract, which is made an exhibit to the petition.   The petition also alleges that between February 19, 1895, and March 19, 1895, the petitioners made all the preliminary studies, etc., for the building, furnished professional consultations to Bartlett and Roach and Springer, and examined the existing buildings of Springer under the direction of Springer, to guide in the studies aforesaid.   It proceeds: "Your orators aver that the said defendants Bartlett and Roach and Springer became and are yet in-

debted to your orators on account of the aforesaid services * * * in the sum of sixteen hundred dollars." * * * It then alleges that Springer proceeded to have excavation made for said building, but that Bartlett and Roach and Springer thereupon abandoned further work on said building and failed to pay the petitioners, wherefore the petitioners are "entitled to a reasonable compensation for as much thereof as has been performed in proportion to the price stipulated for the whole of the work." ·

Also it alleges that defendant Springer fraudulently induced Bartlett and Roach to make the lease and contract by falsely representing to them that he had secured for them a building loan of an amount sufficient, with the money which he, Springer, would loan to them, to pay for the construction of the building; that Bartlett and Roach, upon ascertaining that this building loan was a pretense, compelled Springer to cancel their said lease, and thereupon Bartlett and Roach and Springer abandoned their contract with the petitioners. Also, that on January 8, 1903, the petitioners filed with the clerk of the Circuit Court of Cook County a claim for lien, by means of all which premises the petitioners have become and are entitled to a mechanic's lien in accordance with the statute in such cases made and provided.

The petition closes with a prayer for an account, for a decree for a lien, and for a sale to enforce the same.

The contention of the plaintiffs in error that the demurrer to this intervening petition was improperly sustained, rests upon these grounds:

First. That the petition, leaving out of account the time of filing the claim for lien and the time of beginning the suit, shows a perfect case for a lien against Springer as *owner*, and against Springer's interest in the described property, and this, using the word "owner", as the case of McDermott v. Palmer (11 Barbour, 9), cited by plaintiffs in error, defines it, as the correlative of the word "contractor," and meaning the person who employs the contractor and for whom the work is done under the contract.

McNicholas v. Tinsler.

Second. That the statute governing the disposition of the cause is "An Act to Revise the Law in relation to Liens," approved March 25, 1874, as amended by an Act approved May 31, 1887.

Third. That the amended statute thus governing, while providing a time limitation to the filing of a claim for lien which shall be effective against a third party—creditor, incumbrancer or purchaser—makes no such limitation as to the filing of the claim so far as the "owner" is concerned, the requirement as to him being merely that the claim shall be filed at some time (within the time prescribed by the general statute of limitations), and the suit begun within two years thereafter.

The defendants in error contend that the second of these propositions is incorrect and that as the question involved is one of remedy rather than of contract, the law governing the cause is the one in force when the suit was brought, viz: "The Act to Revise the Law in relation to Mechanic's Liens," approved June 26, 1895, and not the one in force when the contract was made, that is, the Act of 1874 as amended in 1887. To this they cite Coleman on Mechanic's Liens, and various Illinois cases arising and decided before the law of 1895 went into effect, and where consequently the question was between former statutes of different dates. If the defendants in error were right in this contention, it would necessarily justify this decree, for the law of 1895 explicitly provides that the "intervening petition" must be filed within two years after final payment is due, or the lien shall be void as to all parties. In this case the petition was not filed within that time, but several years later.

We think, however, that the authority of the cases cited by plaintiffs in error—Andrews & Johnson Co. v. Atwood, 167 Ill. 249; Kendall v. Fader, 199 Ill. 294; Springer v. Bowerman, 75 Ill. App. 352,—is sufficient to establish the proposition contended for by them, that the Act of 1874 as amended in 1887 governs the disposition of this cause.

But the first and third grounds of the position taken by the plaintiffs in error, as above indicated, are both as nec-

essary to sustain it as is the second, and with neither of them are we in accord.

We have already pointed out in discussing the McNicholas case that *prima facie* it is only the lessee and his interest that are primarily liable to the lien provided for by the statute when it is the lessee who makes the contract for the improvement. In that case we indicated the defect of proof and the weakness of the decretal findings to overcome this *prima facie* presumption against the liability of Springer as "owner" and his interest as an "owner's" interest.

This Kelley case stands on a different footing, for it is the allegations of the petition only that we have to consider. But these allegations seem to us also insufficient to establish the relation of Springer to the contract, which is relied on by the plaintiffs in error.

The allegations of fact amount to this: That Warren Springer was in February, 1895, the owner of the fee of certain lots; that at that time Bartlett and Roach were the owners of a lease for ninety nine years thereof; that by the terms of said lease Bartlett and Roach were "*obligated and authorized*" by Springer to construct a large building thereon, and to employ architects; that Springer agreed to loan Bartlett and Roach $10,000 towards the construction of the building; that Bartlett and Roach made a contract with the petitioners in connection with said proposed construction; that Springer induced Bartlett and Roach to make the lease in question by representing to them that he had secured a building loan for them, and that upon said loan failing, Bartlett and Roach and Springer cancelled the lease.

The allegations interspersed with these statements of fact, that in making the contract and employing the architects, Bartlett and Roach "were the agents" and acting as the agents of Springer, that Springer "became indebted to the petitioners for their services," that Springer "abandoned work on the land," that Springer "fraudulently induced" the making of the lease by misrepresentation as to

McNicholas v. Tinsler.

a building loan, are manifestly conclusions of the pleader and conclusions of law at that.

We do not feel satisfied that the allegations of fact are sufficient to place Springer in the position of the direct contractor with Bartlett and Roach, the " owner," that is, who employed Bartlett and Roach, and " for whom the work is done under the contract." McDermott v. Palmer, *supra.*

The plaintiffs in error rely on Williams v. Vanderbilt, 145 Ill. 238, and Crandall v. Sorg, 198 Ill. 48, as establishing their contention. These cases, and especially the last, certainly go far towards justifying in this regard the language of the argument of counsel, that Springer, under the allegations of the petition, must be considered an owner in precisely the same sense as Bartlett and Roach were owners; and yet, we think, there is a distinction to be made which the length of this opinion forbids us to elaborate. These cases decide that, under like circumstances as those involved here, the owner of the fee cannot escape altogether; under cover of having made such a lease as the one in question, the enforcement of a lien on his interest; rather than that in the matter of notice and procedure to enforce that lien, he is to be treated as "owner" rather than "incumbrancer."

If Springer were not the "owner" in the sense of being distinguished thus from all third parties whose interest was less primarily liable, it must be conceded that the demurrer was properly sustained to the Kelley petition, for it is not contended that the Act of 1874, as amended in 1887, does not require as to all persons other than such an owner the filing of a claim for lien within four months after the last payment shall have become due and payable.

But, even if Springer were to be considered the owner in the highly particular sense involved, as plaintiffs in error contend that he should be, we are not prepared to accede to the proposition, vigorously urged by counsel, that as to him and his interest any day within ten years from the date on which a cause of action accrued under the contract was

early enough to file the requisite lien claim with the clerk of the Circuit Court, and thereupon bring suit.

We have fully and carefully considered this position and thoroughly apprehend the forceful argument of counsel and the distinctions that he is enabled to make between the cases cited by opposing counsel and the one at bar, but we are not convinced that the intention of the legislature, as expressed in the Act, does not import the time limit provided in section 28 (as amended in 1887) into section 4 (as then amended).

It seems to us the whole purpose of the amending Act of May 31, 1887, was to shorten and limit the time within which the claim for a secret lien should be published and enforced.

The additional section 52, which provides for a method by which suit may be summarily hastened by the *owner* after a claim has been filed, is hardly consistent with the theory of the plaintiffs in error that it was intended that the claim for a lien might be kept hanging secretly over the owner's interest for ten years.

Moreover, it is by no means clear that independently of all other questions and of the length of time prescribed in the Statute of Limitations, laches sufficient to defeat this action should not be imputed to one who delayed from 1895 to 1903 the filing of his "intervening petition" to enforce a lien according to the practice of chancery.

Fatal laches is frequently found in a delay less than the time required for the bar of a Statute of Limitations, and objection on the ground of laches to relief prayed for may be considered on demurrer.  Kerfoot v. Billings, 160 Ill. 563, 573.

The order sustaining the demurrer to the petition of Kelley et al. and dismissing the petition is affirmed.

In the "Campbell case", *i. e.* the "Answer and Cross-Bill of A. Campbell and F. H. Campbell, partners doing business as A. Campbell Building Company," there is nothing so different from the Kelley case as to call for a separate discussion of it.

The allegations of Springer's direct responsibility for the contract and his direct relations to the contractors are varied somewhat and perhaps stronger, but even leaving the questions arising from these allegations out of the account, we are compelled, for the other reasons set forth in the preceding discussion of the Kelley case, to the conclusion that the demurrer to the "Answer and Cross-Bill" of Campbell et al. was properly sustained. The decree is therefore affirmed.

McNicholas et al. v. Tinsler et al., affirmed.

Kelley et al. v. Springer, affirmed.

Campbell et al. v. Springer, affirmed.