## David S. Dempster v. Killian V. R. Lansingh.

### Gen. No. 12,363.

1. INJUNCTION—*when assessment of damages upon dissolution of, may be made.* The assessment of damages following the dissolution of an injunction improvidently granted, may be made during the pendency of the undecided basic suit.

2. INJUNCTION—*when partial dissolution justifies award of damages.* Dissolution of an injunction in a material part justifies the assessment of damages as an indemnity for the necessary expense of procuring that dissolution.

Dempster v. Lansingh.

3. INJUNCTION—*when damages by way of solicitor's fees awarded upon dissolution of.* Solicitor's fees which are necessarily incurred in procuring the dissolution of an injunction may be allowed as damages, but where an injunction is merely ancillary to the principal relief sought by the bill and its dissolution is only incidental to the defense made and the fees are incurred in defending the suit generally or in the management of some other branch of the case, they cannot be assessed as damages.

4. INJUNCTION—*when services rendered in connection with motion to dissolve.* The fact that a motion to dissolve an injunction includes an application for the discharge of a receiver appointed by the court as ancillary to the injunction awarded, does not make the services other than necessarily rendered in obtaining the dissolution of the injunction.

5. INJUNCTION—*when damage cannot be urged as not having resulted from.* An injunction which accomplishes the purpose for which it was designed cannot be said to be nugatory and not to have resulted in damage merely because it was inartificial in some respect.

6. INJUNCTION—*what does not affect right to allow solicitor's fees upon dissolution of.* The fact that the solicitors employed to obtain a dissolution of the injunction have a financial interest in the subject-matter affected by the injunction, does not affect the right of the court to allow fees upon dissolution as in other cases.

7. INJUNCTION—*what does not affect right to allow solicitor's fees upon dissolution of.* The fact that the services necessary and performed in securing a dissolution of a preliminary injunction, would be also necessary in a hearng on the merits of the case, will not prevent an allowance for the payment of such services as damages on the dissolution.

8. INJUNCTION—*what damages cannot be awarded upon dissolution of.* Exemplary damages cannot be awarded upon the dissolution of an injunction.

Bill for injunction, etc. Appeal from the Circuit Court of Cook county; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed October 8, 1906.

CANNON & POAGE and JOHN B. HEINEMANN, for appellant.

ROBERT F. PETTIBONE, HENRY W. WOLSELEY and WILLIAM S. FREEMAN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This appeal—a mere ramification or appendage to litigation which has claimed much time and attention from the courts of this county and state since 1882— comes to us in a record of over 5,000 typewritten pages. The printed abstract contains over 800 pages of reading matter and the briefs and arguments over 200. The extent of this matter to be examined sufficiently excuses the delay which has postponed the decision of the case beyond that of those near it in numerical order. Fortunately the disposition of the issues involved does not necessitate a proportionately extended discussion.

The appeal is from a decree entered by a chancellor in the Circuit Court of Cook county, on November 5, 1904, on a suggestion of damages filed in that court September 26, 1903, by leave of court given by another chancellor on September 18, 1903, in an interlocutory order dissolving a temporary or preliminary injunction granted by him April 7, 1902, in a suit in chancery, which at the time this appeal at bar was taken was not at issue. Said suit was entitled David S. Dempster v. Killian V. R. Lansingh et al. It was begun April 7, 1902, by the filing by David S. Dempster of a bill against Lansingh individually and as executor of one John Dempster and against several other defendants. The bill recited the history of a former litigation concerning the ownership of stock in the Rosehill Cemetery Company, and alleged that Lansingh had occupied the position of a trustee for the benefit of the complainant and the various persons made additional defendants to the bill, and of others not so made parties, in managing and controlling the stock and the rights thereto in a controversy with creditors of the corporation; that in that capacity, after negotiations failed, he carried on a litigation with said creditors which lasted fourteen years, and

Dempster v. Lansingh.

was concluded on August 4, 1896; that while acting as such trustee said Lansingh had acquired certain stock in said corporation and received certain dividends thereon, which stock and dividends he pretended to have received in his individual right, but which in law he took as trustee with the duty of accounting for them to the complainant and others similarly situated, but that although at the close of the litigation described a decree had been entered distributing certain stock involved in the litigation and held and controlled by Lansingh while managing the same to the various parties properly entitled to it, yet 455 shares acquired by Lansingh during his trusteeship and thus wrongfully claimed by him in his individual capacity, were not distributed to the said *cestui que trusts,* but were permitted to remain in the possession of said Lansingh until such time as an account might be had and a proper distribution effected. The complainant prayed for an accounting from Lansingh and that Lansingh might be decreed to turn over to complainant whatever stock and money should be found due to him on such accounting.

The bill alleged on information and belief that, aside from this stock and dividends in controversy, Lansingh had little or no property, was in danger of drifting into insolvency or disposing of the said shares and dividends, and spent a large part of his time out of Illinois, and therefore prayed that he might be enjoined from selling, assigning, voting, transferring, delivering or encumbering, or in any way or manner disposing of or intermeddling with said stock or dividends, and from collecting any dividends that might thereafter accrue or be declared on said stock, and from making any assignment of his property or confessing any judgment for the purpose of enabling other persons to obtain his property or liens thereon. It prayed also for a receiver of the said stock and dividends and of all the estate and property, real and personal, of Lansingh.

Upon the same day on which the bill was filed, April 7, 1902, without notice, an injunction was granted in the terms of the bill, on a bond of five hundred dollars, and by the same order a receiver was appointed for all the property and estate of Lansingh.

The writ of injunction and the summons on the bill were served on Lansingh, who filed his answer to the bill June 3, 1902, and at the same time entered a motion to dissolve the injunction and discharge the receiver. This motion was continued for hearing until June 19, 1902, and then apparently postponed from day to day and from time to time for about a month. In the middle of July, 1902, however, just before vacation, the motion was taken up by the court, and after two days had been spent on an oral hearing of it, the chancellor, of his own motion, referred it to a master.

As counsel for appellant here seem to contend that this was a reference of the entire cause on the merits thereof, it may be properly noted that at this time the cause was not at issue, although the answer of Lansingh had been filed contemporaneously with the motion. No replication had, however, then been filed to Lansingh's answer, and the bill was afterwards amended. A general demurrer had been filed for C. J. Dempster, one of the other defendants, whose interests were involved with those of Lansingh. An answer had also been filed by one of the other defendants, whose interests and desires in the litigation appeared by his answer to be identical with those of the complainant. The other four defendants to the original bill do not seem to have appeared to it in any manner at that time.

The order of reference entered July 18, 1902, ran as follows:

"The cause coming on to be heard *on the motion of the defendant, Killian V. R. Lansingh, to dissolve the injunction and discharge the receiver herein,* and the court having heard the arguments of counsel, and it

appearing to the court that the facts are not fully before this court: It is ordered *that this cause be and the same is hereby referred* to Stillman B. Jamieson, one of the masters in chancery of this court, to take testimony and report to the court his conclusions of fact and of law on the following propositions:"

Then followed twenty-six different questions of law and fact. The twenty-fourth of these questions was, "whether or not delay or lapse of time has precluded the complainant from relief by way of temporary injunction?" And the twenty-fifth and twenty-sixth respectively, were: "Under the facts as found, is the defendant, Killian V. R. Lansingh, entitled to have the injunction entered herein dissolved?"

"Under the facts as found, is the defendant, Killian V. R. Lansingh, entitled to have the receiver heretofore appointed herein discharged?"

The other questions relate to the merits of the controversy or claim raised by the allegations of the bill and Lansingh's answer and are issues of law and fact involving those merits.

(It may be noted that the enumeration of the questions in this order of reference is not identical with that given above, but is from seven to fourteen and seventeen to thirty-four—the missing numbers probably having been elided after the first draft of the order. The number of the questions submitted, however, is twenty-six as stated.)

Many hearings were had before the master. He filed his report June 13, 1903. He recited therein the history of the negotiations and litigation out of which the matter before him grew, noting that the complainant's bill was filed twenty-two years after Lansingh began the task of clearing up the Rosehill Cemetery Company, and six years after that task had been accomplished, and that the injunction and receivership were brought about by an *ex parte* order. His report sets forth the order of reference and the twenty-six separate findings of law and fact which he

was directed to make, prefacing them with the statement: "Upon a motion being made to dissolve this injunction and discharge the receiver, a preliminary argument was made in open court and the whole subject-matter was referred for a hearing, the order of reference being as follows:

"The master reported his conclusions seriatim on the interrogatories contained in the order of reference, his answer to the twenty-fourth being that at least Dempster had been guilty of laches to such an extent as to bar him from the relief asked for, without a full and complete hearing. The report declares that the 'master is of the opinion, and accordingly finds, that the complainant was not as a matter of equity entitled to the appointment of a receiver for the defendant's property, or to the issuance of a writ of injunction restraining the disposition thereof, upon an *ex-parte* hearing, as was done in this case.' Said master further finds, as a matter of law, that if the present hearing had disclosed that complainant's contentions were correct, the court would be justified in continuing the injunction in force even though the original issuance of the writ was not based on sufficient grounds."

To the twenty-fifth interrogatory the master answered, however, that for reasons more fully set forth before in his report in answer to several of the questions of fact involving the merits of the complainant's contentions, he was of the opinion that the injunction should be dissolved. In answer to the twenty-sixth interrogatory he found that the receiver should be discharged. Objections to the master's report which were overruled by him were allowed to stand as exceptions thereto before the chancellor who granted the injunction, and a hearing was had thereon. The exceptions were overruled, the master's report was confirmed, the injunction dissolved and the receiver discharged at complainant's costs, by an order entered September 18, 1903. This order began by a recital that the cause had again come on to be heard "upon

the motion of said defendant Lansingh heretofore
herein made for the dissolution of the temporary in-
junction heretofore granted herein, and for the dis-
charge of the receiver heretofore appointed herein,
and upon the report of Stillman B. Jamieson, master
in chancery of this court, on file herein, and upon the
objections thereto of the complainant and of said de-
fendants Wesley Dempster and John W. Sweet, taken
as exceptions, and upon the proofs and exhibits re-
turned with the master's report and on file herein, and
upon the bill of complaint, the answer of said defend-
ant Sweet and the answer of said defendant Lansingh,
and upon the affidavits on file herein;" and closed with
leave to the defendant Lansingh to file suggestions
of damages within ten days from the date of the entry
of the order, the hearing upon said suggestions being
continued until such time as the court might there-
after determine.

September 26, 1903, Lansingh filed his suggestion
of damages, claiming $19,601.85, made up as follows:
$16,000 for necessary counsel fees paid by him in se-
curing the dissolution of the injunction; $1,518.25 for
one-half of the fees of the master, which half he had
been compelled to pay; $1,266.70 for stenographer's
fees paid for transcripts of the testimony and argu-
ments before the master; $202.40 for stenographer's
fees upon various documents necessary in procuring
the dissolution of the injunction; $50 for the services
of an expert bookkeeper in making certain schedules
introduced in evidence before said master; $64.50
for witness fees, telegrams and other charges and
expenses, in and about the procuring of the disso-
lution of the injunction, and $500 for interest on money
borrowed by the defendant to enable him to live and
pay the current expenses of the litigation while his
income and property were tied up by the injunction.
October 12, 1904, this suggestion of damages came up
for hearing before another chancellor of the Circuit

court. Appellant Dempster moved to postpone the hearing until the main cause was before the court for final disposition. This motion was overruled. Dempster's counsel then moved that the suggestion of damages be referred to a master in chancery, to take proofs and report his conclusions of law and fact. This motion was opposed and overruled.

After a hearing, the chancellor on November 5, 1904, entered a decree allowing to the appellee Lansingh of the amounts claimed by him in his suggestions, $14,800 out of the $16,000 paid by him for counsel fees, $759.12, being one-half of the master's fees paid by him, and $107.20, being one-half of certain sums found by the court to have been paid for stenographic work and the work of an expert bookkeeper necessary in hearings before the master. The aggregate sum thus allowed was $15,666.32, and for this amount a judgment was given and execution ordered.

In its decree the court expressly found that two solicitors employed by Lansingh had spent in preparation and in hearings in the case at least 190 days; that all their services had been necessarily rendered in procuring the dissolution of the injunction, and that for their services and those of another solicitor used in the same connection and in combination with one of the two above alluded to, Lansingh had paid $16,000. The court also found that this was a usual, customary and reasonable charge for such services as were rendered in this matter. But, although the chancellor found that all of said services were necessarily rendered in procuring the dissolution of the injunction, yet "being of the opinion that upon the final hearing of the cause, if any, the evidence taken before the master may be of some value," although in his opinion also, "when the case is finally heard, the solicitors for said Lansingh will have to do the same work they have done before," he deducted in his allowance $1,200 from the $16,000 actually shown to have been paid by the appellee for legal services.

He also, for the same reason, disallowed or deducted one-half of the amounts proven to have been paid by Lansingh for master's fees and for various stenographic and bookkeeping expenses.

The $1,266.70 paid by Lansingh for stenographer's fees for transcripts of the testimony and arguments before the master, was found to be covered by a stipulation by which this item of costs was to abide the final outcome of the suit, and was therefore disallowed *in toto*, as was also the $500 claimed for interest on money borrowed.

From this decree the present appeal is prosecuted. The appellant Dempster has assigned thirty-seven errors, challenging in all essential particulars the holdings and proceedings of the chancellor resulting in the judgment. Those argued will be referred to hereinafter in this opinion. The appellee Lansingh has, on the other hand, assigned cross-errors, complaining of the deductions or disallowances made by the court of various items claimed by his suggestions.

One of the contentions made by the appellant is, that the court erred in taking up the suggestion of damages until the cause itself was before the court on final hearing, and it had been determined whether the relief sought by the bill should be granted.

It is urged that because in the order dissolving the injunction "time" was "given until the final disposition of the case in which to file a certificate of evidence and bond," there could be no complete record before a chancellor sufficient to enable him properly to dispose of the suggestion of damages until such a certificate of evidence was filed. This is manifestly a misapprehension of the situation. The time for the certificate of evidence and bond referred merely to the appeal which Dempster had prayed from the order dissolving the injunction and which the court, unmindful of the plainly unappealable nature of the order, had inadvertently allowed.

But appellant also cites Terry v. Hamilton Primary
School, 72 Ill. 479, Woerishoffer v. L. E. & W. Ry.
Co., 25 Ill. App. 84, and Martin v. Jamison, 39 Ill.
App. 248, to the broader proposition that the statute
(chapter 69, section 12 of the Revised Statutes), in pro-
viding that the court "after dissolving an injunction
and before finally disposing of the suit" may assess
damages, etc., means before final decree, but after
a final hearing. Counsel for appellee fail to substan-
tiate their reply to this contention that the statute
has been changed since these cases were decided; but
if these decisions could ever have been held to apply
to cases in which the final end sought was something
more than, or different from, the injunction, which was
preliminarily granted and then dissolved, they can-
not be considered to do so since the decisions in Keith
v. Henkleman, 173 Ill. 144, and 68 Ill. App. 625, and
in Post-Boynton Strong Co. v. Williams, 57 Ill. App.
434, in which, in cases like the present, the statute
receives the natural and obvious construction that
the damages on the dissolution of the injunction may
be assessed during the pendency of the undecided
basic suit. We do not think the chancellor erred in
entertaining, hearing and disposing of the claim for
damages when he did. Nor do we think that, as
claimed by appellant, he should have sent the assess-
ment of the damages to a master, over objection. The
cases cited by appellant in which a chancellor was
held to have erred in refusing a reference, are all cases
in which intricate accounts were involved. Despite
the contention of appellant that such was the case in
the present controversy, we are unable so to view it.
The accounts seem to us simple and easy to under-
stand.

We are brought, then, by the appellant's further
assignments of error to the questions: Did the chan-
cellor err in holding with the appellee that damages
were in this case properly recoverable for the ill-

advised injunction; and, if not, did he err in making the amount of them so large?

On these questions the appellant first urges that the services rendered and expense incurred were not so rendered and incurred exclusively to secure the dissolution of the injunction, but were rendered and incurred either exclusively or so largely and indistinguishably on the merits of the basic cause, that damages cannot be properly awarded on account of them. Indeed, more than once in his argument it is suggested, by implication or expressly, that the reference was on the merits of the cause, that the master's report also was thereon, and that the hearing was on the report. We do not agree with this contention. It is not necessary, as counsel argue, to suppose that the chancellor hearing the claim for damages was influenced to hold the negative of this proposition by the action of the preceding chancellor in allowing the suggestion of damages to be filed.

When the reference to the master was made the main cause was not at issue and could not be so referred under the statute. The "cause" which was referred to the master was very evidently the "motion" on which the cause had then "come on to be heard." The "facts" which were not fully before the court were the facts which would enable the chancellor, as he thought, to dispose judiciously and correctly of that motion, which the order says was "to dissolve the injunction and discharge the receiver." While there might be a difference of opinion as to how far it was necessary to know these facts to pass on the question actually involved, it was within the discretion of the chancellor (who acted on his own motion) and not at all within the power of the appellee or his counsel, to determine what, in this regard, was thus necessary.

The finding of the master in his report is not without force and significance in this connection—"That

if the hearing had disclosed that complainant's contentions were correct, the court would be justified in continuing the injunction in force, even though the original issuance of the writ was not based on sufficient grounds.''

We think the services on the arguments before the chancellor and the master were all performed upon the motion which the appellee had made and brought to a hearing. The appellant, however, claims that even if this be so, no damages are properly recoverable, because the motion was not an independent one to dissolve the injunction, but included a demand that the receiver be discharged. When the injunction was obtained without notice, tying up the appellee's property, a receiver of it all was also appointed in the same order, and the appellee required to turn over all evidences of it to said receiver. Naturally the motion to dissolve the injunction included a motion to end the receivership, which was plainly incidental and ancillary to the injunction. But this made it none the less a motion to dissolve the injunction, nor was there any service or expense in the proceeding which was applicable to the receivership alone and not to the injunction. It would not be reasonable to refuse the indemnity which the law gives for the wrongful issuance of the injunction, because there was an equally wrongful receivership coupled with it which must practically fall if the injunction fell.

The position taken by the appellant that the injunction was nugatory in its effect, even if wrongfully issued, and that therefore the expense necessarily incurred in securing its dissolution cannot be recovered as damages, does not commend itself to us. Even if we should admit that the conclusion properly followed the premise, we could not give it effect, for the premise is not true. An injunction which at once practically stripped a man of the beneficial use, control and income of all his property cannot be called nugatory,

even though the legal title to the larger part of that property was through his own voluntary and revocable act at that time held in trust for him by a third person. The beneficial and equitable interest in the stock in the hands of the trust company could no more be dealt with by the appellee after the injunction was ordered than could the legal title, and other stock and other property not in trust at all were equally affected by its inhibitions. Certainly under such an injunction as this, issued without notice, appellee could not be expected to remain quiescent on the ground that it did not injure him. He was bound to observe it while it was in force, but it was the rightful and natural course for him to seek its dissolution—a course which appellant must have foreseen to be inevitable when he procured it.

Nor do we think the point well taken, that the injunction was as a matter of fact dissolved only in name and not in effect. This contention of appellant is based on the fact that a stipulation tying up the legal possession of the larger part of the stock sought to be affected by the bill of complaint until the conclusion of the litigation, and pledging said stock as security for what might be found due to complainant and others by final decree therein, was entered into by the appellee after the decision of the chancellor that the injunction should be dissolved and the receiver discharged, but before or contemporaneously with the entry of the order carrying said decision into effect.

But in the first place, as we read the record, this stipulation (although suggested as a sort of peacemaking proposition by the chancellor after the appellee had announced an intention, notwithstanding his reinstatement in control of his stock, of not eloigning it from the jurisdiction of the court) was a voluntary act of the appellee, by which, without running counter to his own intentions or wishes, he could allay the fears of the complainant as to the disposition of the

stock, and had no influence, favorable or unfavorable, upon the order dissolving the injunction, which had been recommended by the master and unconditionally determined on by the chancellor before the stipulation was mentioned.

In the second place, even were this not so, it requires very little comparison of the injunction writ with the stipulation to show that the provisions of the stipulation fall far short of the prohibitions of the injunction. If it were permissible—which it does not seem to us to be—to regard the stipulation as in any sense answering to a continuation of the injunction, it is manifest that it amounts to a continuation of but a small part of it. Dissolution of an injunction in a material part justifies the assessment of damages as an indemnity for the necessary expense of procuring that dissolution. Walker v. Pritchard, 135 Ill. 103; Brackebush v. Dorsett, 138 Ill. 167; Keith v. Henkleman, 173 Ill. 145.

The appellant's reply to this, that on such a partial dissolution only a portion of the expense can be recovered, is fallacious. If it was the appellee's right to have the injunction thus dissolved in a material matter, he is entitled to be indemnified for the necessary expense of doing it, and there is nothing in this record which suggests that the expenses could have been curtailed by an insistence only on such partial dissolution as would have reduced the injunction to the terms of the stipulation. However, as we have said, we think that a fair construction of the record shows the attack upon it as an entirety to have been not partly, but wholly successful.

Other contentions made by the appellant against the allowance of any damages whatever, are based on the alleged incompetency and insufficiency of the testimony, expert and otherwise, offered by the appellee. Although this point is somewhat elaborately argued by appellant's counsel, we do not think it calls for

extended notice. A careful inspection of the record has convinced us that the chancellor making the assessment of damages did not, as is claimed, allow any unnecessary "conclusions" to be stated, nor did any such conclusions form the basis of his judgment. Nor do we find the hypothetical questions asked the expert witnesses objectionable. Moreover, although we do not deem it necessary to invoke the principle in this case, the chancellor must be presumed to have based his decision upon competent evidence only, if such exists, and this, we think, in any event, plainly did so exist, even were the contentions of the appellant as to all of the questions put to witnesses concerning which there could be reasonable doubt sustained.

Whether the point argued by appellant, that the interest of the solicitors for the appellant in the event of the suit should prevent the allowance of damages to the appellant which include their fees, is to be considered as an argument against the award of any damages whatever, or only as against the amount awarded, of which by far the greatest part consisted of these fees, we are not clear; but it is immaterial, for in neither view do we consider it well taken. Counsel for appellant, in its support, cite an incidental remark in Jevne v. Osgood, 57 Ill. 340, 347; but the case there was a very different one. The solicitor refused fees for his own services in that case, was the principal defendant in it, and the amount he claimed was declared exorbitant. In this case, until after the dissolution of the injunction the solicitors were not parties to the suit, and the bill was not directed against them. There seems to us no reason why because, as the chancellor found in his decree, these "reputable members of the bar", "practicing their profession in Chicago", "were especially qualified for the services they performed" "by reason of their knowledge of records and facts connected with the subject-matter of the bill", they should be the only lawyers whom the

appellee made defendant in this bill, could not employ without losing his right to indemnity. The injunction did not directly, at all events, affect them nor their rights, nor is it to be assumed that they would have moved in the matter in behalf of the appellee had they not been retained and compensated or promised compensation by him. They would at all events have been under no obligation to do so. That their private interests and wishes were consistent with their professional duties did not render them improper persons for the appellee to employ or compel the forfeiture of an indemnity to which he was otherwise entitled.

But appellant strenuously insists that even if damages to any extent were allowable, the chancellor erred in their amount. He argues that, as in this case other parties than complainant by answer presented their claims against appellee, the solicitor's fees of the appellant must be considered to have been for services rendered against these claimants other than appellant, and he cannot be made to pay them. But it is obvious that the gist of the appellee's demand for damages, including these fees, is that the services were necessary and rendered in procuring the dissolution of the injunction, and not in defending against any claims whatever, except as those claims were involved in the propriety of the injunction. It was the appellant who procured the injunction, not any of the defendants he brought into the case, and he did so under our statute, at the risk of the damages it caused if it was improvidently granted.

It is also insisted by appellant that compensatory damages only, not exemplary, can be allowed on the dissolution of an injunction, and by implication argued that in the present case the amount of the judgment shows that this rule was violated. It is quite true that exemplary or punitive damages were not allowable, but there is nothing in the record to suggest that they were asked or granted. Indeed, as heretofore stated

and as we shall hereinafter again have occasion to repeat, over $2,500 which was actually expended by the appellee in and about the securing the dissolution of the injunction was, for one and another reason, not allowed him, and according to the uncontradicted testimony he is to this amount the loser by the injunction.

Counsel, however, urge that although $16,000 was paid by the appellant to the solicitors who secured the dissolution, and was found a reasonable, usual and customary charge by the chancellor for the services which were by them performed, neither this whole amount nor the whole amount less the deduction of $1,200, which the chancellor made, should be included in the damages, because a much greater proportion of the services rendered than $1,200 bears to $16,000 will be of use both in the shape of available depositions and of the professional knowledge and preparation of the solicitors when the cause comes to ultimate and final trial, and that "only such expenses can be allowed as damages on a dissolution of an injunction as is in excess of or in addition to what is necessary to prepare for trial on the merits."

This material factor in the appellant's case seems to us based on an inaccurate view of the law.

In Marks v. Columbia Yacht Club and Chicago Yacht Club, 121 Ill. App. 308, we stated the respective contentions of the parties to be that the appellant argued "that no services which might be called for upon the merits of the case could be recovered for as rendered upon the dissolution of the injunction, while the appellees urged that services necessary and performed in the dissolution of the injunction were recoverable even though they might be also necessary on the merits." We decided that the position of the appellees was correct, Mr. Justice Ball in his opinion noting that the evidence showed that counsel for appellees directed their efforts to the sole object of obtaining a

dissolution of the injunction; that each appellee employed counsel to obtain such a dissolution; that where counsel fees were necessarily incurred in procuring the dissolution of an injunction they might be allowed as damages; that the work done in the case then at bar was directed toward obtaining a dissolution of the injunction and had no reference to the merits of the case, except in so far as the law learned by counsel upon the investigation and argument of the motion might have been used afterward upon the merits of the bill; that it was therefore immaterial that the labor actually expended upon the motion might have been as well expended upon the demurrer which had been filed to the bill, for as that labor had been applied on the motion with the result of bringing about the dissolution of the injunction, the successful party could recover damages for it under the statute.

This decision the Supreme Court affirmed in Marks v. Columbia Yacht-Club, 219 Ill. 417, in which Mr. Justice Wilkin, delivering the opinion of the court, repudiated the proposition that it made any difference whether or not the knowledge about the case gained upon the hearing of the motion to dissolve was subsequently used upon the trial of the case on its merits. He says, referring to the previous case of Landis v. Wolf, 206 Ill. 392, that the true rule is that solicitor's fees, which are necessarily incurred in procuring the dissolution of an injunction, may be allowed as damages, but that where an injunction is merely ancillary to the principal relief sought by the bill, and its dissolution is only incidental to the defense made, *and the counsel fees are incurred in defending the suit generally or in the management of some other branch of the case, they cannot be assessed as damages.*

We think that under the application of this rule there can be no doubt that the solicitor's fees charged and paid in the case now at bar, were properly recoverable as damages by the appellee. They were

"necessarily incurred in procuring the dissolution of an injunction." They were *not* incurred "in defending the suit generally or in the management of some other part of the case," and it therefore makes no difference that the preparation or investigation for which they paid may lighten subsequent labors to be performed on a final hearing of the cause, or were in that sense not "in excess of" or "in addition to" what is necessary to prepare for trial on the merits. We find nothing in the cases cited by appellant, properly considered, which conflicts with this view, and we see nothing in the record contradicting the findings of the decree that "all of the services were rendered and all of the specified expenditures were made, in procuring the dissolution of the injunction."

The chancellor, however, found that in his allowance $1,200 should be deducted from the $16,000 actually paid the solicitors, and this deduction is assigned as a cross-error by the appellee. We think it very doubtful whether it is not our duty to declare this cross-error (3) and another (5), complaining of the disallowance of one-half of the fees of the master in chancery and one-half of certain amounts paid for stenography and expert bookkeeping, well assigned, and to modify the decree by adding to it these amounts. The reasons for their disallowance specifically given in the decree, are not satisfactory according to the view of the law which we have announced. But on the other hand, the amount of such an assessment of damages as this is under certain rules peculiarly within the discretion of the chancellor. It is difficult to know with exactness all the considerations which affected his action. The reasons or argument given in a decree are not always of controlling importance. Higgins v. Peterson, 64 Ill. App. 256; McNicholas v. Tinsler, 127 Ill. App. 381; The Earl of Ilchester *ex parte,* 7 Vesey, Jr., 348, p. 375. Barbee v. Morris, 221 Ill. 382.

In an oral opinion, before entering the decree, the

chancellor placed the reduction in the master's fee and stenographer's fees on the probability of a stipulation which would reduce subsequent expenses in the litigation, and in his discussion of the charges of the solicitors, he says: "The counsel were certainly warranted in charging *something like* they have charged here."

The amounts mentioned in the eighth paragraph of the decree aggregating $1,266.70 and included in the appellee's computation and claim, we think, for the reasons stated in the decree, were properly disallowed, and we have with hesitation concluded not to disturb the judgment, but to affirm it as it stands. Even thus it undoubtedly seems large for the damages on a dissolution of an injunction, but the chancellor was right in his finding and in his expression of opinion before the decree, that the solicitor's fees were not unreasonable in view of the time and interests involved, and that the evidence to that effect was uncontradicted.

Nor does the assessment of them as damages against the appellant conflict with natural justice. The injunction was obtained without notice. It was a matter of great importance to the appellee pecuniarily. It suddenly took from him the control of all his property. If improvidently granted, it was of the highest importance for him to secure the undoing of the injustice. We do not think that he took unusual or unreasonable means and precautions to obtain what the court afterward decided were his rights. To so obtain them cost him all that this assessment of damages gave him, and even more. Satisfactory evidence that the charges made him were reasonable was produced. It was not contradicted. Although our law does not provide for an indemnity for the expenses caused to a defendant by an ordinary action wrongfully brought, it does supply such an indemnity for an injunction wrongfully obtained and afterward dissolved. When the appellant secured his injunction on an *ex parte*

hearing on commencing his suit—practically thus beginning instead of ending his proceeding with an execution—he certainly took and was justly burdened with the risk of having to pay this indemnity, if it were decided that his drastic proceeding was ill-advised.

The decree of the Circuit Court is affirmed.

*Affirmed.*